SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| KIERA LANE, | ) |
| | ) |
| | ) Arizona Supreme Court |
| Plaintiff-Appellee, | ) No. CV-01-0142-PR |
| | ) |
| v. | ) Court of Appeals |
| | ) Division One |
| THE CITY OF TEMPE and DANIEL | ) No. 1 CA-CV 99-0445 |
| G. SERRANO and GWEN SERRANO, | ) |
| husband and wife, | ) Maricopa County Superior Court |
| | ) No. CV 98-90924 |
| | ) |
| Defendants-Appellants. | ) **O P I N I O N** |
| | ) |
| _____ | ) |

Appeal from Superior Court of Maricopa County
The Honorable Robert H. Oberbillig, Judge

REVERSED AND REMANDED
_____

Opinion of the Court of Appeals, Division One
199 Ariz. 370, 18 P.3d 164 (App. 2001)

VACATED
_____

Law Offices of John Evans, P.C.                                    Scottsdale
     By: John Evans
Attorney for Appellee

C. Brad Woodford, Tempe City Attorney                                 Tempe
     By: Clifford L. Mattice, Assistant City Attorney
Attorney for Appellants

Van O'Steen and Partners                                           Phoenix
     By: Stephen I. Leshner
and
The Langerman Law Offices
     By: Amy G. Langerman
Attorneys for Amicus Curiae Arizona Trial Lawyers Association
_____

Z L A K E T, Justice

¶1          Kiera Lane filed a negligence claim against the City of

1

Tempe and its employee, Daniel Serrano, for damages arising out of an automobile accident. The only theory of liability against the City was respondeat superior. *See Driscoll v. Harmon*, 124 Ariz. 15, 16, 601 P.2d 1051, 1052 (1979)("[T]he act of an employee during the course of his employment is legally the act of the employer."). Both the municipality and Serrano were represented by the same assistant city attorney.

¶2 Pursuant to Arizona Revised Statutes section 12-133, the case was referred to mandatory arbitration. The defendants filed a disclosure statement and answered interrogatories. Serrano was also deposed by the plaintiff. The parties filed a joint pre-hearing statement in which Lane indicated that she intended to call Serrano as a witness at the arbitration hearing. His absence, she asserted in the statement, would be construed as a waiver of the right to appeal. In the same pleading, the defendants specifically objected to this contention.

¶3 On the date of the hearing, Serrano was no longer employed by the City of Tempe. Although his counsel had advised him to be present, Serrano did not attend. No one had subpoenaed him. When it became obvious that he was not going to show, neither side requested a continuance to secure Serrano's presence at the hearing. His attorney actively participated in the case and several other city employees testified in person.

¶4 The arbitrator ultimately found Serrano to be 100% at

2

fault and awarded the plaintiff $16,858 in damages. When the defendants filed a notice of appeal requesting a trial de novo, Lane moved to strike the pleading. She argued that Serrano's nonappearance at the hearing had waived the defendants' right to appeal. Lane's motion was granted by the superior court as to Serrano, but denied as to the City. The court thereafter entered a formal judgment against Serrano. The court of appeals affirmed this ruling, holding that Serrano had not appeared and participated as required by Rule 76 (a) of the Arizona Rules of Civil Procedure.

¶5     We have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution; Arizona Revised Statutes section 12-120.24; and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

## DISCUSSION

¶6     The superior court is required by statute to establish a jurisdictional limit, not exceeding fifty thousand dollars, and to formulate procedural rules for the compulsory arbitration of civil claims in Arizona. A.R.S. § 12-133 (A) (Supp. 2001). Because "something short of a full-blown adversary adjudicatory proceeding is a more efficient and cost-effective way of resolving such disputes," *Martinez v. Binsfield*, 196 Ariz. 466, 467, 999 P.2d 810, 811, ¶ 3 (2000), we have fully supported this alternative mechanism.

¶7     The arbitration rules have evolved over time, primarily

3

in response to perceived weaknesses.  For example, in *Chevron v. Thompson*, 145 Ariz. 85, 699 P.2d 1316 (App. 1985), the court of appeals identified a serious flaw in the process.  Chevron filed a contract action which was referred for mandatory arbitration, but neither the company nor its counsel appeared at the subsequent hearing.  Chevron thereafter appealed from an adverse arbitration award, seeking a trial de novo.  The superior court dismissed the appeal.  The court of appeals reversed, reluctantly observing that the arbitration rules permitted Chevron's maneuver.  It stated:

> Although we agree with the trial judge that apparently any party can circumvent the mandatory arbitration procedure by failing to attend the hearing and then file a notice of appeal, we have no authority to prevent such circumvention. . . . We urge [the legislature and supreme court] to provide safeguards to prevent future violations of the spirit of the arbitration laws.

*Id.* at 86, 699 P.2d at 1317.

¶8      In 1990 and 1991, the rules were amended to address this and other apparent deficiencies.  There was increasing concern, for example, that appeals from arbitration awards were frequently used "to delay proceedings and extort settlements."  Hon. Robert D. Myers, *MAD Track:  An Experiment in Terror*, 25 Ariz. St. L.J. 11, 14 (1993).  Moreover, the purposeful failure of attorneys and their clients to actively participate in arbitration hearings, relying instead on their appeal rights to secure a trial de novo, plainly resulted in a significant waste of resources.

¶9      Arbitration Rule 7(f), now Rule 76(f) of the Arizona

4

Rules of Civil Procedure, was changed to require the filing of a deposit on appeal that would be forfeited by the appellant if the ensuing judgment was not at least 10% more favorable than the arbitration award. *See* Rule 7(f), Uniform Rules of Procedure for Arbitration (2000). More recently, the 10% threshold has been raised to 25%. *See* Rule 76(f), Ariz. R. Civ. Pro. (2002).

¶10 Arbitration Rule 7(a), now Rule 76(a) of the Arizona Rules of Civil Procedure, was amended to prevent the situation that arose in *Chevron*. The rule states: "Any party *who appears and participates* in the arbitration proceedings may appeal from the award or other final disposition . . . ." Rule 76(a), Ariz. R. Civ. P. (2002)(emphasis added); *see also* Rule 7(a), Uniform Rules of Procedure for Arbitration, State Bar Committee's Note (2000)(stating that "only a party who actually appears and participates in the arbitration proceedings may take an appeal").

¶11 Coupled with this was a change in the language of Rule 4(j), now Rule 74(k) of the Arizona Rules of Civil Procedure, to provide that "[f]ailure to appear at a hearing or to participate in good faith at a hearing . . . shall constitute a waiver of the right to appeal absent a showing of good cause." Rule 74(k), Ariz. R. Civ. Pro. (2002). These modifications were designed to facilitate the primary goal of arbitration--a reduction of costs and delay associated with litigating smaller controversies.

¶12 The requirements of Rule 76(a) were addressed by the

5

court of appeals in *Graf v. Whitaker*, 192 Ariz. 403, 966 P.2d 1007 (App. 1998). In that case, Whitaker repeatedly failed to attend her deposition. As a sanction, she was defaulted on liability. *Id.* at 404, 966 P.2d at 1008, ¶ 2. This left only damages to be decided at the arbitration hearing. Although her attorney attended the hearing, Whitaker did not. *Id.* Her failure to appear was later construed by the superior court as a waiver of the right to appeal. *Id.* at 405, 966 P.2d at 1009, ¶ 4.

¶13　　　In reviewing that decision, the court of appeals correctly interpreted Uniform Rules 7(a) and 4(j) "in harmony to require more than minimal participation in arbitration proceedings; both require a party to participate in good faith in order to satisfy the spirit of the arbitration laws." *Id.* at 407-08, 966 P.2d at 1011-12, ¶ 18. However, it wisely remanded the matter for reconsideration because

> Graf has not claimed, nor does the record indicate, that Whitaker had relevant testimony to offer at the damage hearing; nor has Graf claimed, nor does the record indicate, that Whitaker obstructed the conduct of the damage hearing to any degree by failing to accompany her lawyer to that hearing. *In the absence of any showing that Whitaker did not adequately participate in the damage hearing through an appearance by counsel*, we cannot agree that her absence from the damage hearing was properly considered by the superior court in deciding whether she had violated Uniform Rule 7(a).

*Id.* at 408, 966 P.2d at 1012, ¶ 20 (emphasis added).

¶14　　　Lane argues that *Graf* is distinguishable because the hearing in that case concerned only damages. Here, she claims,

6

Serrano had relevant liability testimony to give and should have been subject to cross-examination. The record shows, however, that Serrano gave a deposition before the hearing, and Lane had the opportunity to examine him at that time. Serrano also answered interrogatories and filed a Rule 26.1 disclosure statement. Finally, his counsel appeared at the hearing, called several city employees to testify, and argued the case. Under Rule 76(a), any *party* who participates in arbitration *proceedings* has a right to appeal. Serrano clearly participated throughout much of the process.

¶15 Lane argues, however, that Rule 74(k) deals with a party's failure to personally appear at the arbitration hearing, and compels the result reached here by the superior court and the court of appeals. We do not agree. The language of Rule 74(k) is not specifically limited to the parties themselves. Moreover, Lane's argument hinges on an unreasonably restrictive definition of the word "appearance," something akin to "physically being there." Appearance, however, is a term of art in the law. Not only can it denote a party being physically present in court, it also refers to "[a] coming into court . . . as a lawyer on behalf of a party." *See* Black's Law Dictionary (7th ed. 1999). Lawyers have been making appearances on behalf of clients from the earliest days of the profession.

¶16 In most cases, what constitutes good faith participation

7

is a matter of fairness and common sense. There can be no rigid test. For instance, in *Sabori v. Kuhn*, 199 Ariz. 330, 18 P.3d 124 (App. 2001), the defendant, who resided outside of Arizona, failed to personally appear for an arbitration hearing. Unlike the present case, he had not been deposed, nor had he answered interrogatories. He tried to participate by telephone, but the arbitrator refused to permit it. Even though the court of appeals agreed "that when a party to an accident contests liability and has relevant first-hand testimony to offer on the subject, that party must make himself available for cross-examination at the arbitration hearing, unless mutually satisfactory alternative arrangements have been made," it held that the defendant had not waived the right of appeal because his counsel had appeared and participated at the hearing, and the defendant had made a good faith effort to do so, albeit by telephone. *Id.* at 332, 18 P.3d at 126, ¶¶ 9-10.

¶17     We do not hold today that the physical appearance of a party at an arbitration hearing is never required to satisfy Rule 74(k). It is not our intention to turn the clock back to a time before *Chevron,* when parties and their attorneys failed to attend hearings at all, or simply put on de minimus cases. A good faith effort at appropriate participation is a factual determination to be made on a case-by-case basis. In some situations, a personal appearance may be necessary. This, however, is not one of those

8

instances.

¶18     Lane's argument that she was unable to receive a fair hearing because of a denial of cross-examination falls far short of the mark.  Completed discovery should have provided her with the information needed from Serrano.  She had his deposition testimony and answers to interrogatories.  She also had a disclosure statement from him.  With all of this in hand, Lane was able to win the case in front of the arbitrator.  We fail to see what more she would have gained by cross-examining Serrano again, and she has not shown us how his presence would have made a significant difference in either the conduct of the proceedings or their outcome.

¶19     Finally, we note that both sides had an equal chance to secure Serrano's appearance at the hearing.  It is significant that neither party subpoenaed him or moved for a continuance when his absence became apparent.  The issuance of subpoenas is expressly authorized in arbitration proceedings.  *See* Rule 74(c), Ariz. R. Civ. Pro. (2001).[1]

¶20     Lane contends that the joint pre-hearing statement gave Serrano and the City of Tempe specific notice of her desire to call him as a witness, and warned of the consequences if he failed to

---

[1]  Lane's contention that formal service of process would undermine the goals of the arbitration scheme by creating added delay and expense is exaggerated.  We do not believe that it will or should be necessary to subpoena parties very often, assuming attorneys act like professionals, discuss hearings in advance, and agree to cooperate in the presentation of witnesses and other evidence.

9

appear.  The defendants claim that this "notice" was nothing more than a tactic, an attempt to transform the proceeding into a binding arbitration.  This finger pointing is not helpful.  What seems clear is that the plaintiff had no pre-hearing commitment from the defense to produce Serrano.  Thus, she should have taken independent steps to secure his presence.  *See Merryman v. Sears*, 50 Ariz. 412, 415, 72 P.2d 943, 944 (1937)("[I]f one expects to make a witness of an adversary, he should take proper measures by subpoena, or interrogatories, as the case may require, to procure such testimony.").

## CONCLUSION

¶21     Serrano adequately participated in the proceedings and appeared at the hearing through counsel.  We find that he did not waive his right to appeal the arbitration award.  The decision of the court of appeals is vacated, and the matter is remanded to the superior court for a trial de novo.

_____

THOMAS A. ZLAKET, Justice

CONCURRING:

_____

CHARLES E. JONES, Chief Justice

10

_____

RUTH V. MCGREGOR, Vice Chief Justice


_____

STANLEY G. FELDMAN, Justice

11