119 P.3d 1044

Peter HARRINGTON, a single man, on behalf of himself and all others similarly situated; Donald Hovan and Ingrid Hovan, husband and wife, on behalf of themselves and all others similarly situated; Linda D. Smith and Philip K. Smith, wife and husband, on behalf of themselves and all others similarly situated; James J. Gallipo, a single man, on behalf of himself and all others similarly situated; Kristin Challacombe and Jared Challacombe, wife and husband, on behalf of themselves and all others similarly situated; Dennis M. Moore and Patricia J. Moore, husband and wife, on behalf of themselves and all others similarly situated; Andrew Homer and Doris Homer, husband and wife, on behalf of themselves and all others similarly situated; Edward Watkins and Diane Watkins, husband and wife, on behalf of themselves and all others similarly situated; William Hendertilo and Angelica Hendertilo, husband and wife, on behalf of themselves and all others similarly situated, Plaintiffs/Appellees,

v.

PULTE HOME CORPORATION, a Michigan corporation; Del Webb Communities, Incorporated, an Arizona corporation; Steve Canning and Jane Doe Canning, husband and wife; James McGrath and Jane Doe McGrath, husband and wife; Chris Lewis and Jane Doe Lewis, husband and wife; Pamela Davis and John Doe Davis, wife and husband. Defendants/Appellants.

No. 1 CA–CV 04–0576.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 27, 2005.

Review Denied Feb. 7, 2006.

---

The Shanker Law Firm, P.L.C. By Howard M. Shanker, Tempe, Siegel, Bellovin & Karnas, PC By M. David Karnas, Tucson, Attorneys for Plaintiffs–Appellees.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Stephen E. Richman, David J. Ouimette, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

BARKER, Judge.

¶ 1 This case requires us to determine when an arbitration clause in a contract of adhesion may be enforced. The trial court refused to enforce the clause here. Because we find that the arbitration clause in this case was neither contrary to appellees' reasonable expectations nor substantively unconscionable, we reverse.

### Facts and Procedural Background

¶ 2 Appellees, and the class of claimants they seek to represent, each purchased a home from appellants Pulte Home Corporation or Del Webb Communities, Incorporated. The homes were purchased through sales agents: appellants Steve Canning, James McGrath, Chris Lewis, and Pamela Davis.[1] The subdivisions are known as Springfield Lakes and Solera, in Chandler,

---

1. We refer to all appellants collectively as "ap- pellants" unless the context otherwise requires.

244

Arizona. Appellees have alleged they "were not provided with full, complete and accurate disclosures" when they purchased their homes. Specifically, appellees assert that they and the other home purchasers were not told that the homes were in close proximity to an "aerobatic box" used for Federal Aviation Administration pilot training procedures and a jet engine test facility operating twenty-four hours a day, seven days a week. They allege that these conditions have had a significant adverse impact on their ability to use their homes, consequently causing the value of their homes to diminish. Accordingly, they filed claims for violation of subdivision reporting statutes, breach of contract, consumer fraud, civil racketeering, negligence and negligence per se, fraudulent misrepresentation or concealment, negligent misrepresentation, breach of the duty of good faith and fair dealing, and rescission.

¶ 3 Appellants moved to dismiss or stay the action and to compel appellees to pursue their claims by arbitration. They relied in the trial court, and also rely here, upon a provision in each of the appellees' home purchase contracts containing virtually identical language:

> Any controversy, claim or dispute arising out of or relating to this Agreement or your purchase of the Home (other than claims under the Limited Warranty) shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) and the Federal Arbitration Act (Title No. 9 of the United States Code) and judgment rendered by an arbitrator(s) may be confirmed, entered and enforced in any court having jurisdiction.[2]

Appellants contended the arbitration clause applies with equal force to claims against any of the appellants. This is so, they argued, because (1) the claims were based upon the same allegations, (2) appellees asserted that appellants had acted in concert, and (3) the individual appellants were agents of the corporate defendants.

¶ 4 Appellants also argued in the trial court that appellees' request for class action treatment did not affect their obligation to proceed by arbitration because the American Arbitration Association ("AAA")[3] has Supplementary Rules for Class Arbitrations to accommodate potential class arbitration.[4]

¶ 5 In response to appellants' motion, appellees did not dispute that, if enforceable, the arbitration clause would apply to their claims against all appellants and did not dispute that treatment as a class action would not be foreclosed by submitting to arbitration. Their response focused entirely upon their contention that the arbitration clause was not enforceable.

¶ 6 Appellees' enforcement argument is that the arbitration clause is part of a contract of adhesion and is invalid because it violated their reasonable expectations and was unconscionable. They assert their reasonable expectations were contravened by the failure of the arbitration clause to disclose that they were relinquishing the right to a trial by jury and the failure to disclose the costs of arbitration. They further contend that the potentially applicable fees for arbitration through the AAA, as required by the arbitration clause, are substantively oppressive and unconscionable in their own right. Appellees submitted in the trial court virtually identical statements from five of the homeowners to the effect that they were unaware of the arbitration provision when they signed the contract, arbitration had not been explained to them, they did not understand they were waiving the right to trial by jury, they did not understand the high costs and fees for arbitration and could not afford them, and that being forced to pay such costs would prevent them from obtaining any remedy for their injuries.

**2.** The only difference between the arbitration clause in the different contracts is that contracts in the Solera subdivision included a reference to arbitration of any dispute relating to "purchase or construction" of the home. This difference does not affect our analysis.

**3.** The AAA is a "non-profit public service organization," that "assists in the design and administration of dispute resolution systems." *Cooper v.*

*MRM Inv. Co.,* 367 F.3d 493, 497 n. 1 (6th Cir.2004).

**4.** Citing *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), appellants also asserted in the trial court that it was for the arbitrator to determine whether the arbitration provisions in appellees' contracts permitted treatment of the dispute as a class action.

¶ 7 The superior court denied appellants' motion, ruling as follows:

The Court specifically finds that the arbitration clauses in each of the Purchase Agreements . . . which are adhesion contracts . . . are unenforceable clauses because [they are] contrary to the reasonable expectations of the [appellees] and under the circumstances are unconscionable. The Court specifically finds that the arbitration provision is defective because of the lack of conspicuous and express language of a waiver of the fundamental right to a jury trial [citing *Broemmer v. Abortion Services of Phoenix, Ltd.*, 173 Ariz. 148, 840 P.2d 1013 (1992) ] and does not constitute a knowing, intelligent, and voluntary waiver of same . . .; and because of the lack of notice that AAA arbitration can involve substantial fees which they must pay and which the Court specifically holds should be included in an arbitration clause (and which in the Court's view, should also be in bold or other conspicuous type just as the waiver of the right to a jury should be).

A formal order was entered. Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101.01(A)(1) (2003).

### *Discussion*

¶ 8 Appellants contend the trial court erred by denying their motion to compel arbitration on the basis that it violated the appellees' reasonable expectations and was unconscionable. As discussed below, reasonable expectations and unconscionability have been held by the Arizona Supreme Court to constitute separate theories of relief. *Infra* ¶ 39. We address some preliminary matters and then address each primary issue in turn.[5]

### *1. Preliminary Matters*

#### *a. Choice of Law*

 ¶ 9 Appellants assert that the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1999) ("FAA"), applies to the arbitration clause in this case and mandates application of the arbitration clause. While we agree that the FAA applies, that statute has been construed to permit the application of state law to void arbitration clauses under certain circumstances. Specifically, the United States Supreme Court has held that states may regulate arbitration clauses "under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' " *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (quoting 9 U.S.C. § 2) (emphasis added).[6] This authority is limited:

What states may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing' directly contrary to the Act's language and Congress' intent.

*Id.*

 ¶ 10 Because of this policy, "[g]enerally applicable contract defenses, such as

---

5. Appellees contend alternatively that the trial court erred by denying the motion with respect to all appellees when the record contained no information of any kind to support a finding of financial hardship for any but five of the appellees. Though we address the sufficiency of information as to the five, *infra* ¶¶ 47–49, we need not address the alternative issue as we reverse on other grounds.

6. The pertinent language of § 2 of the FAA is similar to the Arizona statute. Arizona law provides that

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save *upon such grounds as exist at law or in equity for the revocation of any contract.*

A.R.S. § 12–1501 (2003) (emphasis added). Section 2 of the FAA is as follows:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Courts may not, however, "invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id.*

¶ 11 Accordingly, Arizona contract law may be applied if it is contract law applicable to contracts generally and not simply arbitration clauses. Both the doctrines of reasonable expectations and substantive unconscionability are such doctrines. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 392, 682 P.2d 388, 397 (1984) ("In adopting this rule [of reasonable expectations] we do not create a special field of contract law...."); *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 87–88, 907 P.2d 51, 56–57 (1995) ("This court previously has noted the rule that 'reasonable expectations' and unconscionability are two distinct grounds for invalidating or limiting the enforcement of a contract...."). Arizona law pertaining to reasonable expectations and substantive unconscionability is applicable here.

### b. Enforceability of the Arbitration Clause as to the Claims Against All Appellants

■ ¶ 12 Appellants argue that the arbitration clause in this case applies to require arbitration of appellees' claims against all appellants. Appellees contend that appellants have raised this issue for the first time on appeal and urge us to refuse to address it.

¶ 13 The record demonstrates that appellants did make this argument in the superior court in their motion to compel arbitration. Appellees' response to that motion did not dispute the point. The trial court was therefore justified in concluding that the question was not in dispute. We do not find it significant, as appellees suggest, that the trial court's minute entry failed to address it. Moreover, having not disputed appellants' argument in the trial court proceedings, appellees have waived any challenge to it on appeal. *ABC Supply, Inc. v. Edwards*, 191 Ariz. 48, 50, 952 P.2d 286, 288 (App.1996). Thus, the arbitration clause, if enforceable, is applicable to all appellants.

### c. The Impact of Class Action Issues

■ ¶ 14 Appellants also assert that the enforceable nature of the arbitration agreement is not affected by appellees' desire to obtain class action treatment for their claims. Appellees did not dispute this contention in the trial court proceedings when appellants raised it in their motion to compel arbitration. Here, they assert that we need not address the issue as, they contend, costs incurred on an individual basis are sufficient to render the clause unenforceable.

¶ 15 Appellants represented to the trial court, and appellees did not deny, that the AAA has adopted rules for class arbitrations to make possible the administration of potential class claims in arbitration. Further, the United States Supreme Court has recently held that, under an arbitration clause with "sweeping language concerning the scope of questions committed to arbitration, the question whether the parties intended to have class action treatment available in arbitration is a question of contract interpretation and arbitration procedures which was to be resolved by the arbitrator." *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 453, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). The breadth of the arbitration clause in this case, *supra* ¶ 3, matches that of the clause in *Bazzle:* "All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract ... shall be resolved by binding arbitration...." *Id.* at 448, 123 S.Ct. 2402. Thus, we do not find that the presence of a potential class renders this arbitration clause unenforceable.

### 2. Reasonable Expectations

■ ¶ 16 We consider that reasonable-expectations claims may present questions of both fact and law. *See Averett v. Farmers Ins. Co. of Ariz.*, 177 Ariz. 531, 534, 869 P.2d 505, 508 (1994) (quoting Restatement (Second) of Contracts ("Restatement") § 211 cmt. f (1981)) (remanding for fact finder to determine if contract was "beyond the range of reasonable expectations"); *Am. Family Mut. Ins. Co. v. White*, 204 Ariz. 500, 507, ¶ 19, 65 P.3d 449, 456 (App.2003) (finding "no facts to support a 'reasonable expectations' revision of [an] insurance policy"). We must defer,

absent clear error, to the factual findings upon which the trial court's conclusions are based. *In re Estate of Jung*, 210 Ariz. 202, 204, ¶ 11, 109 P.3d 97, 99 (App.2005) ("We are bound by a trial court's findings of fact unless they are clearly erroneous."). We review the trial court's conclusions of law, however, de novo. *Id.*

¶ 17 In this case, the trial court found that the arbitration clause violated the doctrine of reasonable expectations on two separate grounds: (1) that the waiver of a jury trial was not explicitly referenced and "knowingly" made and (2) the lack of notice as to what the trial court considered to be substantial fees for the arbitration that appellees must pay. We address in this section the reasonable-expectations claim as to the waiver of jury trial. We take up the reasonable-expectations claim as to the amount of costs after we address substantive unconscionability.

### a. Arizona's Reasonable–Expectations Doctrine

¶ 18 The seminal case in Arizona as to reasonable expectations is *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388. In *Darner* our supreme court adopted the doctrine of reasonable expectations as set forth in Restatement § 211:

Standardized Agreements

(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.

(2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.

(3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

*Id.* at 391, 682 P.2d at 396. As set forth in § 211(1), *Darner* begins from the proposition that when a contract with standardized terms is signed, the signing party "adopts the writing ... with respect to the terms included in the writing." *Id.* As set forth in § 211(3), it is only when "the other party has reason to believe" that the signing party would not accept the term that the term may be struck from the agreement. *Id.* Under *Darner*, therefore, the arbitration clause in this case is presumptively valid and enforceable, whether or not any appellee read it or appreciated its full effect, *unless* the reasonable-expectations limitation set forth in § 211(3) applies. *Accord Broemmer*, 173 Ariz. at 151, 840 P.2d at 1016 ("Our conclusion that the contract was one of adhesion is not, of itself, determinative of its enforceability.").

¶ 19 In defining the scope of the subsection 3 limitation, *Darner* expressly held that terms are beyond the range of reasonable expectation if one party to the contract "has reason to believe that the [other party] would not have accepted the agreement if he had known that the agreement contained the particular term." 140 Ariz. at 391–92, 682 P.2d at 396–97 (quoting Restatement § 211 cmt. f). This reason to believe may be (1) shown "by the prior negotiations," (2) "inferred from the circumstances," (3) "inferred from the fact that the term is bizarre or oppressive," (4) proved because the term "eviscerates the non-standard terms explicitly agreed to," or (5) proved if the term "eliminates the dominant purpose of the transaction." *Id.* at 392, 682 P.2d at 397 (quoting Restatement § 211 cmt. f).[7] The

---

7. The full text of comment f is as follows:

 Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation. A debtor who delivers a check to his creditor with the amount blank does not authorize the insertion of an infinite figure. Similarly, a party who adheres to the other party's standard terms does not assent to a term if the other party has reason to believe that the adhering party would not have accepted the agreement if he had known that the agreement contained the particular term. Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or

*Darner* court further held that the doctrine of reasonable expectations (6) "requires drafting of provisions which can be understood if the customer does attempt to check on his rights." *Id.* at 394, 682 P.2d at 399. We are also required to consider (7) any other facts relevant to the issue of what appellees reasonably expected in this contract. *Id.* at 393, 682 P.2d at 398 (quoting *Smith v. Melson, Inc.*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983) ("A contract should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances."))[8]

### b. Applying the Reasonable–Expectations Doctrine

■ ¶ 20 We use the seven factors above as a guide in determining whether the clause here either violates the adhering parties' reasonable expectations or creates a fact question requiring submission to a finder of fact. As to factor (1) "prior negotiations," there are no inferences or facts to suggest that any appellee believed there would or would not be an arbitration clause in the contracts. The same holds true as to factor (2), what we can "infer[ ] from the circumstances." These contracts were for the sale of homes. There is no record of any discussion or circumstances that go to the presence or absence of an arbitration clause in the contracts.

¶ 21 As to factor (3), a question as to reasonable expectations may be inferred if the terms at issue are "bizarre or oppressive." *Id.* There is a strong public policy, both federal and state, favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[The FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."); *Liberty Mut. Fire Ins. Co. v. Mandile*, 192 Ariz. 216, 220, 963 P.2d 295, 299 (App.1997) ("Arizona has enacted the Uniform Arbitration Act. . . . Our public policy strongly favors arbitration as an expeditious and relatively inexpensive method of resolving disputes.").

¶ 22 We acknowledge that some arbitration clauses may contain terms that are "bizarre or oppressive." *See Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Mgmt., Inc.*, 165 Ariz. 25, 30, 795 P.2d 1308, 1313 (App.1990) (setting aside an arbitration provision that gave one party the absolute option of selecting either arbitration or litigation and of reconsidering its choice at any time prior to final judgment, finding it so "grossly inequitable" as to run "counter to the philosophy of encouraging arbitration"). However, there is nothing unusual about the arbitration clause at issue here that would create a question of fact on whether the clause is "bizarre or oppressive."

¶ 23 Factor (4) requires us to consider whether the terms at issue "eviscerate[ ] the non-standard terms explicitly agreed to." *Darner*, 140 Ariz. at 392, 682 P.2d at 397 (quoting Restatement § 211 cmt. f). Appellees have made no such allegation. Factor (5) is a related inquiry: whether the terms would "eliminate[ ] the dominant purpose of the transaction." *Id.* The dominant purpose of the transaction in this case is the purchase of a home. The arbitration clause here does not undercut this basic purpose. The *Averett* case, 177 Ariz. 531, 869 P.2d 505, illustrates this point. In *Averett*, an insured entered an insurance contract, purchasing increased limits to $500,000. *Id.* at 533, 869 P.2d at 507. An exclusion left the limits for family members at the prior, standard level of $30,000. *Id.* at 532, 869 P.2d at 506. The dominant purpose of the contract in *Averett* was to provide increased insurance coverage, but the clause at issue in *Averett* eliminated that purpose as to family members. *Id.* at 532–34, 869 P.2d at 506–08. The supreme court accordingly remanded for a fact finder to consider whether the clause was outside the insured's reasonable expectations. *Id.* at 535, 869 P.2d at 509. Here, the presence or absence of an arbitration clause does not

---

from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the adhering party never had an opportunity to read the term, or if it is illegible or otherwise hidden from view. This rule is closely related to the policy against unconscionable terms and the rule of interpretation against the draftsman.

8. This may include, as we reference below, *infra* ¶ 28, the physical size and location of the terms in the contract document.

eliminate the dominant purpose of the transaction: the purchase of a home.

¶ 24 Factor (6) is whether the clause "can be understood if the customer does attempt to check on his rights." *Darner*, 140 Ariz. at 394, 682 P.2d at 399. The arbitration clause specifically refers to "the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) and the Federal Arbitration Act." Had there been any question about whether those rules permitted a jury trial, simply reviewing them would have answered that question.[9]

¶ 25 Finally, factor (7) is whether there are any other relevant facts not included in the prior categories. The underlying premise of a reasonable-expectations argument is a claim by the party seeking to invoke the doctrine that the party would not have entered the contract had he or she known the clause was present. Though not dispositive, there is no affidavit asserting that, had appellees known of the arbitration clause in the contracts, they would not have entered the purchase contracts for the homes.

¶ 26 Considering all of the factors, it is clear to us on this record that the reasonable-expectations doctrine does not prohibit application of the arbitration clause in these contracts. Appellees, however, attempt to avoid the conclusion that they did not satisfy the *Darner* criteria by relying on *Broemmer*, 173 Ariz. 148, 840 P.2d 1013. Appellees claim that the language in *Broemmer* referring to the lack of a "conspicuous or explicit waiver of the fundamental right to a jury trial or any evidence that such rights were knowingly, voluntarily and intelligently waived" means that the arbitration clause here was outside their reasonable expectations. *Id.* at 152, 840 P.2d at 1017. Appellees advance two related arguments: First, that *any* arbitration clause must conspicuously or explicitly waive the right to jury trial in order to be valid, and second, that any waiver of the right to jury trial must be knowingly, voluntarily and intelligently made. We reject these arguments.

### c. Must Jury Rights Be Conspicuously or Explicitly Waived?

■ ¶ 27 Appellees' first argument is that the lack of a conspicuous and explicit waiver of their jury trial rights removed the arbitration clause from their reasonable expectations. As noted above, appellees do not assert that, as a matter of fact, they did not *understand* that an agreement to arbitrate all disputes was a substitution of arbitration for court proceedings. Their factual claim was that they were not *aware* that the contract contained such a provision. Indeed, an agreement to submit disputes to arbitration is necessarily an agreement to forego dispute resolution by a jury. *Madden v. Kaiser Found. Hosp.*, 17 Cal.3d 699, 131 Cal.Rptr. 882, 552 P.2d 1178, 1187 (1976). As the *Madden* court observed, "to predicate the legality of a consensual arbitration agreement upon the parties' express waiver of jury trial would be as artificial as it would be disastrous." *Id.; accord Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir.2002) ("Common sense dictates that we reject this argument. '[T]he loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.' ") (quoting *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001)); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984) ("[Parties] cannot use their failure to inquire about the ramifications of [the arbitration] clause to avoid the consequences of agreed-to arbitration."). Thus, we interpret the arbitration clause as an effective statement that the right to jury trial will not be afforded.

■ ¶ 28 Returning to the claim that appellees were unaware of the clause, we note that fact questions on a reasonable-expectations theory may be raised "if the adhering party never had an opportunity to read the term, or if it is illegible or otherwise hidden from view." *Darner*, 140 Ariz. at 392, 682 P.2d at 397 (quoting Restatement § 211 cmt. f); *see Rocz v. Drexel Burnham Lambert, Inc.*, 154 Ariz. 462, 466, 743 P.2d 971, 975

---

9. The documents are available publicly, on-line, at American Arbitration Ass'n, Rules and Procedures, *http://www.adr.org /RulesProcedures* and FindLaw, Laws: Cases and Codes: U.S.Code:

Title 9: Section 1, *http://findlaw .com/casecode /uscodes/9/Chapt ers/1/sections /section—1.html*, respectively, (last visited Sept. 6, 2005).

(App.1987) (noting customer was bound by clearly worded arbitration clause whether or not she read it).[10] Here, however, the record shows that the arbitration clause began with a bold "ARBITRATION." The font size for the text was neither abnormally small nor different from the other contract provisions. The page containing the arbitration provision was initialed by appellees. The page contained a total of only eight paragraphs on one of the contracts; as to the other contract the pertinent page only contained seven paragraphs. Thus, the arbitration clause in these cases was not obscure.

¶ 29 Accordingly, we conclude that the lack of a conspicuous and explicit waiver of the right to jury trial does not mean the arbitration clause was beyond appellees' reasonable expectations. The test from *Darner* must be applied. The arbitration clause in the contracts here passes that test.

### d. Must a Jury Trial Be "Knowingly" Waived in a Civil Setting?

¶ 30 Appellees' second argument is that the waiver of jury trial rights in this setting must be made knowingly, intelligently, and voluntarily. It is well established in federal jurisprudence that a test of waiver applied to other constitutional rights, *i.e.,* that waiver be shown to be an intentional relinquishment or abandonment of a known right or privilege, is not applied to the right to a jury trial in a civil action. *See,* for examination of federal authorities, 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2321 (2d ed.1995), citing, *inter alia, U.S. v. Moore,* 340 U.S. 616, 621, 71 S.Ct. 524, 95 L.Ed. 582 (1951) (failure to demand jury trial in accordance with requirements of civil rule is waiver). As the authors of the treatise explain, "[w]aiver by failure to make a timely demand is complete even though it was inadvertent and unintended and regardless of explanation or excuse." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2321 (2d ed.1995).

¶ 31 Arizona law is in accord. Obtaining a jury trial in civil litigation is not automatic.

As in federal courts, waivers are routinely imposed for failure of a party to comply with the procedure required to request a jury trial. Pursuant to Arizona Rule of Civil Procedure 38(b), a jury trial must be demanded "in writing at any time after the commencement of the action, but not later than the date of setting the case for trial or ten days after a motion to set the case for trial is served, whichever first occurs." Parties who wish to preserve the right must take affirmative action, and failure to act constitutes waiver. Ariz. R. Civ. P. 38(d); *Johnson v. Mofford,* 193 Ariz. 540, 547, ¶ 36, 975 P.2d 130, 137 (App.1998) ("The right to a jury trial is waived by failing to object to a proceeding without a jury and failing to request a jury."). The right to a jury trial may also be waived by failure to appear and participate in mandatory, court-supervised, arbitration. *See* Ariz. R. Civ. P. 74(k); *Lane v. City of Tempe,* 202 Ariz. 306, 307–08, ¶¶ 7–11, 44 P.3d 986, 987–88 (2002).

¶ 32 The United States Supreme Court has explained that, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights that the Constitution guarantees," at or before trial, "to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamonte,* 412 U.S. 218, 237, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection." *Id.* at 235, 93 S.Ct. 2041. In *Schneckloth,* for example, the court held that the requirement of a "knowing and intelligent waiver" does not apply to a determination whether consent to search is voluntary for purposes of the Fourth Amendment. *Id.* at 241, 93 S.Ct. 2041. In the context of procedural due process rights, the Court described its cases as indicating only that "every reasonable presumption should be indulged against ... waiver" and that waiver would not be presumed. *Id.* at 235 n. 16, 93 S.Ct. 2041 (citation omitted).

---

10. In *Rocz,* this court held that an arbitration agreement was not outside reasonable expectations for a customer account with a securities dealer and that the customer was presumed to have consented absent any contract ambiguity and "absent oppressive or unconscionable terms." 154 Ariz. at 466–67, 743 P.2d at 975–76.

¶ 33 Thus, we reject appellees' arguments that an arbitration clause can only be effective through knowing and voluntary consent. The arbitration clause here is consistent with appellees' reasonable expectations under Arizona contract law.

### e. But what about Broemmer?

¶ 34 Appellees argue, however, that the Arizona Supreme Court's language in *Broemmer* requires us to strike the arbitration clause. We disagree.

¶ 35 In *Broemmer* the court used a reasonable-expectations theory to strike an "Agreement to Arbitrate" signed prior to a patient undergoing a clinical abortion. 173 Ariz. at 149, 840 P.2d at 1014. Part of the reason for the Arizona Supreme Court's decision was the fact that "there was no conspicuous or explicit waiver of the fundamental right to a jury or any evidence that such rights were knowingly, voluntarily and intelligently waived." *Id.* at 152, 840 P.2d at 1017. Appellees focus on this language to argue that *Broemmer* adopted a rule that any waiver of a civil jury trial must be "knowingly, voluntarily and intelligently" made in order for an arbitration agreement to be upheld. This was not the holding in *Broemmer. Broemmer* expressly rejected such a rule. It stated:

> [W]e decline the invitation to write a sweeping, legislative rule concerning all agreements to arbitrate. Instead, we decide *this* case.

*Id.* at 153, 840 P.2d at 1018. Thus, *Broemmer* did not announce a new rule supplanting *Darner* and the doctrine of reasonable expectations set forth therein.

¶ 36 *Broemmer* is also distinguishable on the facts. *Broemmer* did not invalidate the "Agreement to Arbitrate" in that case solely on the grounds that it did not contain an express waiver of the right to a jury trial. Although the court referred to that factor, *Id.* at 152, 840 P.2d at 1017, the case involved other significant and complicating factors that are not present here. First, the party seeking to set aside the arbitration clause was a young woman claiming to be the victim of medical malpractice. *Id.* at 149–50, 840 P.2d at 1014–15. She was seeking an abortion and experiencing great stress at the time the arbitration agreement had been

signed. *Id.* Second, the *Broemmer* court was particularly impressed by what it found to be an unfair term in the arbitration clause: the requirement that the arbitrator be a physician in the same medical specialty as the doctor rendering the medical services to her. *Id.* at 152, 840 P.2d at 1017. Third, the *Broemmer* court found reason to question the circumstances under which the agreement was signed, as a condition to receive medical care and without explanation. *Id.* at 151, 840 P.2d at 1016.

¶ 37 In this case, the arbitration clause was part of a commercial transaction. The factors of potential physical injury, an emotionally charged setting for the signing of the contract, and an arbitrator arguably biased toward the party who drafted the clause, are not present. *Broemmer* did not replace *Darner* as applied to arbitration agreements. *Broemmer* applied the principles from *Darner* and found the "Agreement to Arbitrate" violated those principles. *Broemmer* did not establish a "sweeping legislative rule concerning all agreements to arbitrate." *Id.* at 153, 840 P.2d at 1018. Applying the principles from *Darner* to the facts here results in an enforceable arbitration clause. Thus, *Broemmer* and *Darner* are both consistent with upholding the arbitration agreement in this case.

### f. Summary re Reasonable Expectations

¶ 38 Arizona's reasonable-expectations doctrine, as expressed in *Darner* and its progeny, does not mandate separate reasonable-expectations standards as to arbitration clauses or jury trials. *Broemmer* did not create a new rule applicable to all standardized contracts with arbitration clauses. It applied *Darner.* We likewise decline to adopt a sweeping rule that precludes application of an arbitration clause that is consistent with *Darner* and the doctrine of reasonable expectations. We are not at liberty to create a separate "reasonable expectations" rule for arbitration clauses. Were we to do so we would run afoul of Supreme Court decisions and the FAA. *See Allied–Bruce Terminix Cos.*, 513 U.S. at 281, 115 S.Ct. 834 ("What States may not do is decide that a contract is

fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.").

### 3. Substantive Unconscionability

 ¶ 39 Our supreme court has explained "that 'reasonable expectations' and unconscionability are two distinct grounds for invalidating or limiting the enforcement of a contract." *Maxwell,* 184 Ariz. at 88, 907 P.2d at 57. Even when contract provisions are " 'consistent with the reasonable expectations of the party' they are unenforceable if they are oppressive or unconscionable." *Id.* (quoting Broemmer, 173 Ariz. at 151, 840 P.2d at 1016). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell,* 184 Ariz. at 89, 907 P.2d at 58 (citation omitted). Factors showing substantive unconscionability include "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*

 ¶ 40 "[T]he determination of unconscionability is to be made by the court as a matter of law." *Id.* at 87, 907 P.2d at 56. But a court "cannot make its determination without first making factual findings." *Id.* Thus, we will defer to the trial court's factual findings, if any, but review the determination of unconscionability and any conclusions de novo.

¶ 41 In *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), Randolph wished to have nullified an arbitration clause. She contended that the "arbitration agreement's silence with respect to costs and fees creat[ed] a risk that she [would] be required to bear prohibitive arbitration costs ... and thereby force[d] her to forego" her claims. *Id.* at 90, 121 S.Ct. 513. The Court recognized that the existence of large arbitration costs could preclude a litigant from effectively vindicating her right, but found the record absent of any *proof* of those costs.[11] *Id.* at

81, 121 S.Ct. 513. Thus, the Court deemed the "risk" of prohibitive costs "too speculative to justify the invalidation of [the] arbitration agreement." *Id.* at 91, 121 S.Ct. 513.

¶ 42 The Court has made it clear that arbitration is appropriate only "[s]o long as the prospective litigant effectively may vindicate" his or her rights in the arbitral forum. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (discussing statutory rights). As such, arbitration costs are directly related to a litigant's ability to pursue such a claim. *Blair v. Scott Specialty Gases,* 283 F.3d 595, 605 (3rd Cir.2002). Arizona courts explain that the primary purpose of arbitration is to provide an inexpensive and speedy final disposition of disputes, as an alternative to litigation. *Canon Sch. Dist., No. 50 v. W.E.S. Const. Co., Inc.,* 180 Ariz. 148, 152, 882 P.2d 1274, 1278 (1994); *Rancho Pescado, Inc. v. N.W. Mut. Life Ins. Co.,* 140 Ariz. 174, 182–83, 680 P.2d 1235, 1243–44 (App.1984) (holding that the "primary attraction of arbitration" is providing an "expeditious and inexpensive method of dispute resolution").

¶ 43 In *Randolph,* the Supreme Court adopted a case-by-case approach to determining whether fees imposed under an arbitration agreement deny a potential litigant the opportunity to vindicate his or her rights. 531 U.S. at 92, 121 S.Ct. 513. It also placed the burden upon the party seeking to invalidate the agreement to demonstrate that arbitration would be prohibitively expensive. *Id.*

¶ 44 Additionally, *Randolph* dictates that arbitration agreements are enforceable in the absence of individualized evidence to establish that the costs of arbitration are prohibitive. *Id.* at 91–92, 121 S.Ct. 513. "To invalidate the [arbitration] agreement on that [speculative] basis would undermine the liberal federal policy favoring arbitration." *Id.* at 91, 121 S.Ct. 513 (citation and internal quotation omitted); *see also Sydnor,* 252 F.3d at 306 ("[F]ailure of an arbitration agreement to address costs and fees does not alone make the agreement unenforceable.").

---

11. The agreement in *Randolph* provided "no indication of the rules under which arbitration [would] proceed or the costs," and there was no indication in the record that Randolph's claim

would be arbitrated under any consumer-protective scheme. 531 U.S. at 94, 121 S.Ct. 513 (Ginsburg, J., dissenting).

Arizona has the same policy favoring arbitration. *See* A.R.S. § 12–1501 (stating that arbitration agreements are generally enforceable).

¶ 45 Appellees represented to the superior court that costs to proceed as the arbitration clause required, under the Construction Industry Arbitration Rules of the AAA, would require an initial filing fee of $6,000 for claims between $500,000 and $1,000,000, plus a case service fee of $2,500. Applying the rules of class arbitration would trigger an additional $3,250 filing fee. Claims may be heard by one or three arbitrators at the discretion of the AAA, and these arbitrators must be compensated at their stated rate for conference and study time (a rate not part of the record). In addition, parties to arbitration must pay for rental of a hearing room. Appellees also argued that, depending on the ultimate size of the class and whether punitive damages were recoverable, the actual amount at issue could be much larger, which would affect the arbitration fees. Appellants did not dispute the fee schedule set out by appellees. Thus, we accept the amounts that are of record as accurate.

¶ 46 Appellees' claims are for amounts between $500,000 and $1,000,000. The costs of record are small when compared to the amount they seek to recover and compared to the amount they would likely have to pay in litigation expenses if arbitration were not available.

¶ 47 The affidavits submitted by the five named appellees stated they could not afford the cost of arbitration, either because they are retired and live on a "modest fixed income" or self-employed and live on a "low fixed income." In those affidavits, appellees further stated that a cost of "even a thousand dollars" for arbitration would disallow them from bringing the lawsuit. The affidavits offer no specific facts regarding appellees' financial situations, only conclusory statements. There is no showing of assets or why arbitration costs would be a hardship, let alone a *prohibitive* hardship as required by *Randolph*, 531 U.S. at 91–92, 121 S.Ct. 513. Also, appellees ignore the fact that the rules of arbitration applicable here allow for the deferral or reduction of the administrative fees associated with arbitration. The applicable AAA rule provides that ["t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." AAA CONSTRUCTION INDUSTRY ARBITRATION RULES AND MEDIATION PROCEDURES R.50 (2003).

¶ 48 The appellees who provided affidavits assert that even $1,000 in costs would preclude them from arbitrating their case. Appellees do not explain how they expect to litigate (as opposed to arbitrate) claims of $500,000 to $1,000,000 for less than $1,000 in costs. One obvious possibility is that an attorney would take the case on a contingency basis and advance costs. That same possibility would apply to arbitration.

¶ 49 On this record, appellees have not met their burden of proving arbitration will be prohibitively expensive. *Randolph*, 531 U.S. at 92, 121 S.Ct. 513. They have not shown that any arbitration costs or fees at all will be incurred, let alone prohibitively expensive ones, as they may qualify for deferral or waiver of all fees. They do not even show arbitration will put them in any worse position than litigation in allowing them to pursue their claims. As such, the allegation that the arbitration clause is substantively unconscionable on this record is speculative at best. Enforcement of the arbitration agreement under such circumstances does not "oppress or unfairly surprise" appellees and result in "an overall imbalance in the obligations and rights imposed by the bargain." *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58. The arbitration clause here is not substantively unconscionable.

### 4. Reasonable Expectations and the Arbitration Fee Schedule

¶ 50 Though a different legal theory, appellees' reasonable expectations argument based on the allegedly prohibitive arbitration fees also fails. We apply the seven factors from *Darner* that we set forth earlier. *Supra* ¶ 19.

¶ 51 As to factors (1) and (2), there were no prior negotiations or circumstances at the time of the contract that refer to the presence or absence of fees for arbitration. As to factor (3), the fee schedule is neither "bizarre or oppressive." The overall fee schedule itself is a graduated one, allowing for fees as

low as $125 for a claim of $10,000 or less and $375 for a claim of $75,000 or less. AAA SUPPLEMENTARY PROCEDURES FOR THE RESOLUTION OF CONSUMER-RELATED DISPUTES C–8 (2003). As discussed, the fee schedule also contains a hardship provision to defer or waive all or part of the administrative fees and costs for a particular claimant.

¶ 52 As to factors (4) and (5), the fee schedule does not undercut any "nonstandard terms explicitly agreed to" or "eliminate the dominant purpose of the transaction," which in this case is the purchase of a home. As to factor (6), the fee schedule is clearly available if the signing party attempted "to check on his rights." And, as to the broad category (7) factors, there is nothing in the record that shows that appellants, at the time the contract was entered, had "reason to believe" appellees would not have signed the contract had they known of the potential for arbitration fees.

¶ 53 The fee schedule in this case, on the record, complies with Arizona's law of reasonable expectations.

### 5. Attorneys' Fees on Appeal

¶ 54 Appellants have requested an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A) (2003), under which fees may be awarded to the prevailing party in a matter arising out of contract. In the exercise of our discretion, we decline to award fees. Appellants may recover their appellate costs pursuant to Arizona Rule of Civil Appellate Procedure 21(a).

### Conclusion

¶ 55 For the reasons above, we reverse and remand for proceedings consistent with this opinion. The arbitration clause here is enforceable.

CONCURRING: MAURICE PORTLEY and SUSAN A. EHRLICH, JJ.