743 P.2d 971

**Susan Ward ROCZ, Plaintiff-Appellee,**

v.

**DREXEL BURNHAM LAMBERT, INCORPORATED, a Delaware corporation, Defendant-Appellant.**

**1 CA-CIV 8883.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 29, 1987.

Burch & Cracchiolo by Stephen E. Silver, Edwin D. Fleming, Phoenix, for plaintiff-appellee.

Meyer, Hendricks, Victor, Osborn & Maledon by Donald W. Bivens, Diane M. Johnsen, Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Judge.

We consider whether the superior court properly denied the motion by Drexel Burnham Lambert, Incorporated (Drexel) to compel arbitration of the federal-securities, state-statutory, and common-law claims of appellee Susan Ward Rocz (Rocz).

In light of the Supreme Court's recent decision in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), we reverse as to both the federal and state law claims.

### 1. *Facts*

Rocz opened an account with Drexel to purchase and sell securities. Rocz agreed that any controversy arising out of her securities account with Drexel would be settled by arbitration, pursuant to ¶ 16 of Drexel's standardized Customer's Agreement:

> Any controversy between [Drexel and Rocz] arising out of said account or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or the

National Association of Securities Dealers, Inc. as [Rocz] may elect.

Section 8 of the Security Option Agreement between Drexel and Rocz contained a similar provision. The arbitration clauses of the Customer and Security Option Agreements are written in standard contractual boilerplate language.

■ Rocz sued Drexel, alleging that she lost $33,000 in 7 months as a result of Drexel engaging in excessive trading of her $300,000 securities account. Specifically, Rocz alleged that the trading constituted a device, scheme, or artifice to defraud, in violation of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and in violation of the Investment Company Act of 1940 and the Investment Advisers Act of 1940, 15 U.S.C. §§ 80a–1, *et seq.* and 80b–1, *et seq.* Rocz also alleged that Drexel was liable for fraud, breach of contract, negligent hiring and supervision, breach of fiduciary duty, violation of state securities laws, consumer fraud, and racketeering. Drexel moved to compel arbitration of all the claims in Rocz's complaint pursuant to the quoted provisions and the Federal Arbitration Act.[1] 9 U.S.C. §§ 1, *et seq.* After oral argument, the trial court denied Drexel's motion without comment. Drexel timely appealed that order. Denial of a motion to compel arbitration is substantively appealable. A.R.S. § 12–2101.01; *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. 250, 705 P.2d 490 (App.1985).

### 2. The Applicability of McMahon

The *McMahon* court considered whether a claim under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986), was arbitrable. Relying on *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Second Circuit had held the claim nonarbitrable. *McMahon*, 788 F.2d 94, 98 (2d Cir.1986);

*see* C. Katsoris, *The Arbitration of a Public Securities Dispute*, 53 Fordham L.Rev. 279 (1984). The Supreme Court held that *Wilko* applies only in cases where arbitration proceedings are inadequate to protect a claimant's substantive rights—and that as it is now conducted, arbitration adequately protects a claimant's rights under the federal securities laws. *McMahon*, 482 U.S. at ——, 107 S.Ct. at 2338, 98 L.Ed.2d at 194.

The *McMahon* plaintiffs made essentially the same arguments as Rocz. First, the McMahons, like the *Wilko* plaintiffs, argued that § 29(a) of the Securities Exchange Act of 1934, the non-waiver provision, barred enforcement of their promise to arbitrate. The *McMahon* court held that the non-waiver provision "only prohibits waiver of the substantive obligations imposed by the Exchange Act." 482 U.S. at ——, 107 S.Ct. at 2338, 96 L.Ed.2d at 194. Because the right to a judicial—as opposed to an arbitral—forum is not a substantive right, the Court held that the non-waiver provision is not implicated by an agreement to arbitrate: "Ordinarily, '[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" 482 U.S. at ——, 107 S.Ct. at 2339, 96 L.Ed.2d at 196, *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444, 456 (1985).

The *McMahon* court acknowledged that *Wilko*, decided in 1953, was predicated on "a general suspicion of the desirability of arbitration and the competence of arbitral tribunals," but that the reasons for such judicial mistrust of the arbitral process "have been rejected subsequently by the Court as a basis for holding claims to be nonarbitrable." 482 U.S. at ——, 107 S.Ct. at 2340, 96 L.Ed.2d at 197. *See also Moses*

---

1. In superior court the parties did not address the application of Arizona's statute concerning enforcement of arbitration provisions. *See* A.R.S. § 12–1501. Section 2 of the Federal Arbitration Act is applicable to both federal and state courts' consideration of arbitration provisions in contracts evidencing transactions involving commerce. *Southland Corp. v. Keating,*

465 U.S. 1, 14, 104 S.Ct. 852, 861, 79 L.Ed.2d 1, 14 (1984). Significantly, the *McMahon* court reaffirmed "the federal policy favoring arbitration," which requires that courts "rigorously enforce agreements to arbitrate." *McMahon*, 482 U.S. at ——, 107 S.Ct. at 2337, 96 L.Ed.2d at 193. That strong policy compels arbitration of both Rocz's federal and state claims.

*H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 779 (1983).

■ The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Federal Arbitration Act, 9 U.S.C. § 2; *McMahon.* The Court discussed those decisions subsequent to *Wilko* that held that arbitral tribunals can competently handle cases involving legal and factual complexities, that the streamlined procedures of arbitration do not entail any consequential restriction of substantive rights, and that judicial review is sufficient to ensure arbitral compliance with the statutes under which claims are brought. The Court concluded: "It is difficult to reconcile *Wilko*'s mistrust of the arbitral process with this Court's subsequent decisions involving the Arbitration Act." 482 U.S. at ——, 107 S.Ct. at 2340, 96 L.Ed.2d at 185.

The *McMahon* Court's conclusions about arbitration generally, and about the Federal Arbitration Act specifically, require reversal of the trial court's denial of Drexel's motion to compel arbitration of Rocz's claims. This result is consistent with Arizona law. A.R.S. § 12–1501; *U.S. Insulation, Inc.,* 146 Ariz. at 258, 705 P.2d at 498.

■ In this case, Rocz's agreement with Drexel permits her to elect arbitration in accordance with the rules of the securities exchange or association of her choice. The *McMahon* plaintiffs were permitted an identical election in the customer's agreement at issue in that case. *See* 788 F.2d at 98 (provision quoted in full). Because the safeguards of having oversight of arbitration by a securities exchange or association apply to Rocz's claim, just as they did in *McMahon,* the agreement to arbitrate is enforceable.

It is irrelevant that Rocz's claim arises under the 1933 Act rather than the 1934 Act. In fact, the substantive right contained in § 17(a) of the 1933 Act is substantially similar to that contained in § 10(b) of the 1934 Act, at issue in *McMahon.*[2] To hold that oversight by the Securities and Exchange Commission ensures fair arbitration under one securities act but not another would be incongruous. The Ninth Circuit has held:

> Because of the "minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act," *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981), we conclude that the *Conover [v. Dean Witter Reynolds, Inc.,* 794 F.2d 520 (9th Cir.1986)]* decision regarding the arbitrability of section 10(b) claims should also control the question concerning section 17(a) claims.

*Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185, 1189 (9th Cir.1986).

Moreover, *Wilko* was based largely on the fact that § 12(2) of the Securities Act of 1933 provides an *express* private right of action. Any private right of action under § 17(a) of the same Act is implied, not express, just like any private right of action recognized under § 10(b) of the 1934 Act, at issue in *McMahon.* Therefore, Rocz's § 17(a) claim is arbitrable.

■ To defeat a motion to compel arbitration under the Federal Arbitration Act, an objecting party must show that Congress intended to make an exception to the Arbitration Act for claims brought under the particular statute. *McMahon,* 482 U.S. at ——, 107 S.Ct. at 2337, 96 L.Ed.2d at 194. If a private right of action exists under the Investment Advisers Act, federal law permits arbitration. *See, e.g., Moncrieff v. Merrill Lynch,* 623 F.Supp. 1005 (E.D.Mich.1985). Rocz has not pointed out, nor have we found, anything in the Investment Advisers Act or in its legislative history indicating that claims brought under that act are nonarbitrable.

### 3. *The Applicability of Darner*

The centerpiece provision of the Federal Arbitration Act, 9 U.S.C. § 2, provides that an arbitration provision "shall be valid, ir-

---

**2.** *Compare* 15 U.S.C. § 77q(a) (fraudulent or misleading statements in offer or sale of securities) with 15 U.S.C. § 78; (manipulative or deceptive device in connection with the purchase or sale of securities).

revocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Rocz urges our affirmance of the trial court's decision because that court held the arbitration clauses violated legal or equitable contract principles. However, Rocz misreads the record. The trial court merely summarily denied Drexel's motion to compel arbitration without articulating its reasons; it did not state that the clauses violated legal or equitable principles.

The gravamen of Rocz's argument under § 2 is that she was not given the opportunity to bargain for the arbitration clause. She also argues that the arbitration clauses are invalid and unenforceable as violative of both legal and equitable principles because they were obtained by Drexel, an agent which had a fiduciary duty to Rocz, its principal.

■ Rocz's arguments are ill-conceived. Parties cannot repudiate their written contracts by asserting that they neglected to read them or did not really mean them. As the court stated in *Boyd v. Merrill Lynch,* 611 F.Supp. 218, 221, *aff'd on rehearing,* 614 F.Supp. 940 (S.D.Fla.1985):

> In this case, plaintiff has alleged that she is an unsophisticated investor, that the arbitration clause is merely a standardized form favoring defendants, and that plaintiff never agreed to be bound by the arbitration provision. Plaintiff basically attempts to argue out of existence all standardized customer contracts in the brokerage industry. The proliferation of these contracts, while not absolute proof of their legality, certainly is testimony to their workability and suggests that they are valid.

■ Rocz argues that *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984), compels us to hold the arbitration clauses unenforceable. However, *Darner* is not inconsistent with the federal law requirement that this court enforce the arbitration clauses. In fact, *Darner* specifically approved the enforceability of standard form contract provisions:

> The rule which we adopt today for interpretation of standardized contracts ... recognizes that most provisions of standardized agreements are not the result of negotiation; often, neither the customer nor salesperson are aware of the contract provisions. The rule ... charges the customer with knowledge that the contract being "purchased" is or contains a form applied to a vast number of transactions and includes terms which are unknown ...; *it binds the customer to such terms.*

140 Ariz. at 393–94, 682 P.2d at 398–99 (emphasis added).

The rule adopted in *Darner* also "requires drafting of provisions which can be understood if the customer does attempt to check on his rights." 140 Ariz. at 394, 682 P.2d at 399. In this case the arbitration clauses are clearly worded and if Rocz had read them she would have understood them. There was no overreaching by Drexel. Therefore, the trial court should have ordered arbitration of the federal claims.

■ Rocz also argues that Drexel's arbitration provision was beyond her reasonable expectations, and that this constitutes one of the "grounds that exist at law or equity for the revocation of any contract" under § 2. *See also Restatement (Second) of Contracts* § 211(3) (1979). Other courts have reasoned that arbitration provisions in securities contracts are enforceable regarding state claims because a securities customer should reasonably expect the arbitration provisions and because they are quite common in securities contracts. *E.g., Ilan v. Shearson/American Express, Inc.,* 632 F.Supp. 886, 890–91 (S.D.N.Y.1985). Absent some evidence of misconduct, courts have conclusively presumed that customers assented to arbitration provisions. *E.g., Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 446 n. 1 (S.D.N.Y.1985); *Boyd,* 611 F.Supp. at 221.

In light of the strong legislative policy favoring arbitration, we find the reasoning of these courts persuasive. Absent an ambiguity in the arbitration provision, and absent oppressive or unconscionable terms,

we presume that Rocz assented to the arbitration terms that she should have reasonably expected to be included in this securities contract. We therefore reject Rocz's argument that the arbitration provision is unenforceable on legal or equitable grounds.

### 4. *Conclusion*

Based on the Supreme Court's recent decision in *McMahon,* we conclude that the arbitration provision contained in ¶ 16 of Drexel's Customer Agreement is enforceable. The competence of arbitral tribunes has been established by the federal Arbitration Act, and the procedures of arbitration are safeguarded by oversight by a securities exchange or association of Rocz's choice. Federal law clearly mandates enforceability of arbitration clauses under these circumstances.

Additionally, we do not find any legal or equitable grounds to hold the arbitration provision unenforceable. Although the provision is contained in a boilerplate clause of a standardized form, Rocz should have reasonably expected such a require-ment and would have easily understood the provision had she read it. Absent ambiguity in the terms or misconduct by Drexel, we presume Rocz assented to the arbitration requirement.

For the foregoing reasons, we reverse the superior court's denial of Drexel's motion to compel arbitration of Rocz's federal and state claims and remand this case to the superior court for proceedings consistent with this opinion.

EUBANK, J., and SHARP, J. Pro Tem., concur.

NOTE: The Honorable NOREEN SHARP was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 31.