307 P.3d 77

John H. CLARK, a single man,
Plaintiff/Appellee,

v.

RENAISSANCE WEST, LLC, a foreign limited liability company doing business in Arizona as Springdale West; Renaissance West Realty, LLC, Defendants/Appellants.

No. 1 CA–CV 12–0692.

Court of Appeals of Arizona,
Division 1, Department D.

July 30, 2013.

Hornstein & Bennett PLLC by Gail R. Hornstein, James G. Bennett, Scottsdale, Attorneys for Appellants.

Udall Shumway PLC by H. Micheal Wright, Lincoln M. Wright, Mesa, Attorneys for Appellee.

## OPINION

GOULD, Judge.

¶ 1 This appeal examines whether the trial court erred in ruling that an arbitration agreement was substantively unconscionable because the cost to arbitrate was prohibitively high. For the following reasons, we affirm.

### *Facts and Procedural Background*

¶ 2 After having surgery for a hip fracture, eighty-eight-year-old John H. Clark ("Plaintiff") was admitted into Springdale West, a skilled nursing facility owned by Renaissance West, LLC and Renaissance West Realty, LLC (collectively, "Defendants"). Three days later, he signed an arbitration agreement (the "Agreement") which required Plaintiff to arbitrate all disputes with the facility.

¶ 3 After his discharge, Plaintiff filed a complaint against Defendants in Superior

Court, which included claims for medical negligence and abuse and neglect of a vulnerable adult pursuant to Arizona Revised Statutes ("A.R.S.") section 46–455, *et seq.* The claims were based on Plaintiff's allegation that while he was at Defendants' facility, he was neglected by nursing staff and consequently developed a severe pressure ulcer on his back that tunneled to the bone and required medical treatment and long-term care.

¶ 4 Defendants moved to dismiss and to compel arbitration. The court held an evidentiary hearing at which Plaintiff's expert testified that based on the complex nature of Plaintiff's claims, it would cost Plaintiff approximately $22,800 in arbitrator's fees to arbitrate the case. Plaintiff testified that he was retired and lived on a fixed income, and that based on the likely amount of arbitrator's fees, he could not afford to arbitrate his claims.

¶ 5 After the evidentiary hearing, the trial court ruled that the Agreement was substantively unconscionable and therefore unenforceable as a matter of law. The court based this finding in part on its determination that Plaintiff's limited income would make it extremely difficult, if not impossible, for Plaintiff to pay the arbitrator's fees necessary to arbitrate his case.[1] Accordingly, the trial court denied Defendants' motion to dismiss and to compel arbitration.

¶ 6 Defendants timely appealed. We have jurisdiction over the order denying the motion to compel arbitration pursuant to A.R.S. § 12–2101.01(A)(1).

### Discussion

¶ 7 Whether a contract is unconscionable is a question of law that we review de novo. *Maxwell v. Fid. Fin. Servs., Inc.,* 184

Ariz. 82, 88–89, 907 P.2d 51, 57–58 (1995). However, we defer to any factual findings made by the trial court, unless such findings are clearly erroneous. *Harrington v. Pulte Home Corp.,* 211 Ariz. 241, 247, 252, ¶¶ 16, 40, 119 P.3d 1044, 1050, 1055 (App.2005).

¶ 8 An unconscionable contract is unenforceable. *Id.* at 252, ¶ 39, 119 P.3d at 1055; *see also* A.R.S. § 12–1501 (arbitration agreements are not enforceable on "such grounds as exist at law or in equity for the revocation of any contract"). There are two types of contractual unconscionability: substantive and procedural. *Nelson v. Rice,* 198 Ariz. 563, 567, 12 P.3d 238, 242 (App.2000). Procedural unconscionability addresses the fairness of the bargaining process, which "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell,* 184 Ariz. at 88–89, 907 P.2d at 57–58 (quoting Dan B. Dobbs, 2 *Law of Remedies* § 10.7, at 706 (2d ed.1993)).[2] In contrast, substantive unconscionability addresses the fairness of the terms of the contract itself. *Id.* at 88, 907 P.2d at 58. A contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties. *Harrington,* 211 Ariz. at 252, ¶ 39, 119 P.3d at 1055; *Maxwell,* 184 Ariz. at 88, 907 P.2d at 58.

¶ 9 An arbitration agreement may be substantively unconscionable if the fees and costs to arbitrate are so excessive as to "deny a potential litigant the opportunity to vindicate his or her rights." *Harrington,* 211 Ariz. at 252, ¶ 43, 119 P.3d at 1055; *see also Green Tree Fin. Corp. -Ala. v. Randolph,* 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373

1. The court also reasoned the Agreement was substantively unconscionable because the terms of the Agreement were one-sided, requiring mandatory arbitration for the types of claims a patient could bring against the facility, but not for the types of claims the facility could bring against a patient.

2. The trial court found the Agreement was not procedurally unconscionable, and Plaintiff has not challenged that finding on appeal. Thus, Defendants' arguments referencing the fact the Agreement was a separate document from other admission paperwork and was conspicuously written in bold print and large type are largely irrelevant, because while these facts may be relevant to procedural unconscionability, they do not bear on substantive unconscionability. For the same reason, Defendants' arguments referencing the fact the Agreement was not a "take it or leave it" agreement or a pre-condition to admittance to the facility, and that it could have been rescinded within thirty days of signature primarily relate to procedural unconscionability.

(2000) (holding that excessive arbitration costs may preclude litigants from effectively vindicating their rights). The party seeking to invalidate an arbitration agreement on such grounds has the burden of proving that arbitration would be prohibitively expensive. *Harrington*, 211 Ariz. at 252, ¶ 43, 119 P.3d at 1055; *Randolph*, 531 U.S. at 90, 121 S.Ct. 513. Whether arbitration is prohibitively expensive is a question of fact that depends on the unique circumstances of each case. *See Harrington*, 211 Ariz. at 252, ¶ 43, 119 P.3d at 1055 (explaining that "the Supreme Court adopted a case-by-case approach to determining whether fees imposed under an arbitration agreement deny a potential litigant the opportunity to vindicate his or her rights") (citing *Randolph*, 531 U.S. at 92, 121 S.Ct. 513).

■ ¶ 10 In determining whether arbitration costs are prohibitively expensive, courts have considered several factors. First, the party seeking to invalidate the arbitration agreement must present evidence concerning the cost to arbitrate. *Randolph*, 531 U.S. at 91–92, 121 S.Ct. 513; *Harrington*, 211 Ariz. at 252, ¶¶ 41–44, 119 P.3d at 1055. This evidence cannot be speculative; it must be based on specific facts showing with reasonable certainty the likely costs of arbitration. *Randolph*, 531 U.S. at 91–92, 121 S.Ct. 513; *Harrington*, 211 Ariz. at 252, ¶¶ 41–44, 119 P.3d at 1055; *see also Phillips v. Assocs. Home Equity Servs., Inc.*, 179 F.Supp.2d 840, 847 (N.D.Ill.2002) (party must make "a reasonable, good faith effort to estimate" arbitration costs).

■ ¶ 11 Second, a party must make a specific, individualized showing as to why he or she would be financially unable to bear the costs of arbitration. *Id.* at ¶ 47. This evidence must consist of more than conclusory allegations stating a person is unable to pay the costs of arbitration. *Id.* Rather, parties must show that based on their specific income/assets, they are unable to pay the likely costs of arbitration. *Id.*

■ ¶ 12 Third, a court must consider whether the arbitration agreement or the applicable arbitration rules referenced in the arbitration agreement permit a party to waive or reduce the costs of arbitration based on financial hardship. *Id.* at ¶¶ 47, 49 (holding an arbitration agreement was not substantively unconscionable because, in part, the agreement provided that any claim or dispute would be resolved under the American Arbitration Rules ("AAA"); the applicable AAA rules provided for waiver or reduction in arbitration fees based on "extreme hardship"); *Jones v. Gen. Motors Corp.*, 640 F.Supp.2d 1124, 1134 (D.Ariz. 2009) (finding arbitration fee not substantively unconscionable under Arizona law in part because arbitration rules referenced in arbitration agreement provided for waiver and deferral of fees based on financial hardship).

■ ¶ 13 We conclude there is reasonable evidence to support the trial court's finding that "[i]n this particular case, Plaintiff has established that he has a fixed, limited income that would make it extremely difficult, if not impossible, to pay to arbitrate the claim."

### *Cost to Arbitrate*

¶ 14 At the hearing, Plaintiff's expert Jeffrey Victor testified about the amount of arbitrator's fees Plaintiff would likely incur to arbitrate his case. Victor testified that arbitrators in the Phoenix area typically charge between $300 and $475 per hour, and that arbitrators with expertise in medical malpractice usually charge at least $400 per hour. An exhibit containing three arbitrators' billing statements showing rates of $380–400 per hour was admitted at the hearing. Regarding how long the hearing would likely take, Victor also testified that due to the complex nature of Plaintiff's claims, it was likely that Plaintiff would need to call between five and seven experts, as well as several witnesses, including two to three members of the nursing staff, the administrator of the facility, the wound nurse, the attending physician, the treating wound surgeon, a specialist in geriatric or internal medicine, a nursing expert, a nursing home expert, Plaintiff, and Plaintiff's nephew. Accordingly, Plaintiff provided evidence it would likely take at least five days for the arbitration hearing (assuming eight hours per day).

¶ 15 Because the Agreement required that three arbitrators be appointed if the parties could not agree on a single arbitrator,[3] and to split the arbitration fees regardless of who prevailed, Victor testified that it would cost Plaintiff approximately $22,800 in arbitrators' fees alone to arbitrate his claims.

¶ 16 Defendants argue that Victor's testimony was speculative and that he lacked the foundation to testify because Defendants had not yet filed an answer, making it impossible for Victor to know with certainty what issues would be litigated in the arbitration. However, any lack of certainty about the exact cost of this arbitration goes to the weight, not the admissibility or evidentiary foundation of Victor's testimony. *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir.2004) (instructing the party seeking to avoid arbitration to "present specific evidence of *likely* arbitrator's fees and its financial ability to pay those fees so that the court can determine whether the arbital forum is accessible to the party") (emphasis added). On this record, the trial court properly concluded that while "the amount of discovery necessary to prepare for an arbitration hearing, the number of witnesses who would be called to testify and the length of the hearing are all difficult to predict at this early stage of the process," it is reasonable to infer "from the evidence and statements of counsel and the Court's experience as a judicial officer in similar cases ... that this type of case is expensive to litigate."

¶ 17 Defendants also argued that Victor was not qualified to testify about the amount of time needed to arbitrate Plaintiff's claims because he had not actually represented a client in a medical malpractice arbitration. We note, however, that Victor had practiced law for nearly thirty years, had been dealing with long-term care cases for twelve years, and that approximately ten to twelve of his cases had involved arbitration agreement issues. Again, Defendants' argument goes to

the weight of Victor's testimony, not its foundation or admissibility. *See City of Phoenix v. Brown*, 88 Ariz. 60, 64, 352 P.2d 754, 756 (1960) (explaining that the lack of the highest degree of skill or qualification of an expert witness goes to the weight of his testimony rather than to its admissibility).

### Plaintiff's Ability to Pay

¶ 18 Plaintiff testified that he was retired, living on a fixed income,[4] and did not have any financial resources such as savings or stocks. Plaintiff further testified that a portion of his monthly income consisted of veteran's assistance that is provided to veterans who are "hard pressed for money." Based on his financial situation, Plaintiff stated he would be unable to pay the arbitrators' fees needed to arbitrate his case. We conclude this evidence supports the trial court's factual finding that arbitration would be cost-prohibitive for Plaintiff.

¶ 19 Defendants contend that Plaintiff's income, which Defendants estimate to be $55,560 per year, was sufficient to pay the estimated $22,800 in arbitration costs. However, as explained above, the trial court is in the best position to evaluate witness credibility and demeanor, and we therefore defer to the trial court's factual findings absent a clear abuse of discretion (and there was no such abuse here).

### Waiver or Reduction in Fees

¶ 20 Finally, unlike *Harrington*, the Agreement does not provide for a reduction or waiver of Plaintiff's fees based on financial hardship. The Agreement simply states the parties will "contribute equally to payment of the fees charged by the Arbitrator or Arbitrators." Moreover, the Agreement is not subject to any arbitration rules, such as AAA, that provide for waiver/reduction of fees based on financial hardship.[5]

---

3. Plaintiff's assertion that three arbitrators would be necessary was not challenged by Defendants in their briefs on appeal. *See State Farm Mut. Auto. Ins. Co. v. Novak*, 167 Ariz. 363, 370, 807 P.2d 531, 538 (App.1990) (failing to develop an argument properly results in waiver on appeal).

4. Plaintiff's total monthly income was $4,630, which consisted of the following: $1,717 in so-

cial security; $1,200 from a pension; and $1,703 in "veteran's assistance." Plaintiff testified that apart from his monthly income, he had no other financial resources.

5. We note that parties not subject to arbitration may request a waiver or deferral of court fees

### Agreement Unconscionable

¶ 21 Because we defer to the trial court's findings of fact absent clear error, *Harrington*, 211 Ariz. at 247, ¶ 16, 119 P.3d at 1050, we conclude there is reasonable evidence supporting the trial court's determination that Plaintiff would be unable to afford to arbitrate his claims. As a result, the Agreement effectively precludes Plaintiff from obtaining redress for any of his claims, and is therefore substantively unconscionable and unenforceable. *See id.* at 252, ¶ 42, 119 P.3d at 1055 ("The Court has made it clear that arbitration is appropriate only '[s]o long as the prospective litigant effectively may vindicate' his or her rights in the arbital forum.") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).[6]

### Conclusion

¶ 22 For the foregoing reasons, we affirm.

CONCURRING: MARGARET H. DOWNIE, and PATRICIA A. OROZCO, Judges.

and costs based on financial hardship if they litigate in court. *See* A.R.S. 12–302(C) (deferral); A.R.S. 12–302(D) (waiver).

6. Having determined that the Agreement was substantively unconscionable, we need not reach