IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CONCETTA RIZZIO, *Plaintiff/Appellee*,

*v.*

SURPASS SENIOR LIVING LLC, et al., *Defendants/Appellants*.

No. 1-CA CV 19-0221

FILED 1-30-2020

---

Appeal from the Superior Court in Maricopa County
No. CV2018-090357
The Honorable Sherry K. Stephens, Judge

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

---

COUNSEL

Udall Shumway PLC, Mesa
By H. Micheal Wright, Lincoln M. Wright
*Counsel for Plaintiff/Appellee*

Lewis Brisbois Bisgaard & Smith LLP, Phoenix
By Kevin C. Nicholas, Bruce C. Smith, Rae Richardson
*Counsel for Defendants/Appellants*

---

## OPINION

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**P E R K I N S**, Judge:

¶1        This appeal addresses whether an agreement to arbitrate a claim is substantively unconscionable based on arbitration costs when counsel for the party seeking to avoid arbitration has agreed to advance all costs.

¶2        Surpass Senior Living ("Surpass") appeals from a superior court ruling denying its motion to compel arbitration. The court found the arbitration agreement both substantively and procedurally unconscionable, and that the agreement violated plaintiff's reasonable expectations. For the following reasons, we reverse the court's finding that the costs of arbitration rendered the agreement as a whole unconscionable, but affirm as to the agreement's cost-shifting provision and sever it from the agreement.

### FACTUAL AND PROCEDURAL HISTORY

¶3        In April 2017, Deborah Georgianni arranged for her mother, Concetta Rizzio, to live at Mariposa Point ("Mariposa"), a nursing care facility managed by Surpass. Georgianni, as Rizzio's power of attorney, entered a contract on Rizzio's behalf with Mariposa. Later that year, Georgianni signed a similar contract when moving Rizzio to a higher care level at Mariposa.

¶4        Both contracts included identical agreements to arbitrate all claims arising from the contract ("Agreement"). The Agreement contained a cost-shifting provision stating that Rizzio would be responsible for all "[c]osts of arbitration, including [defense]'s legal costs and attorney's fees, arbitration fees and similar costs," should she make a claim against Surpass. The Agreement also contained the following portions in boldface type:

> **Because this arbitration agreement addresses important legal rights, The Community encourages and recommends that you obtain the advice of legal counsel to review this agreement prior to signing this arbitration agreement.**

\* \* \*

**Admission to the Community is not contingent upon signing this Agreement.**

**¶5** In February 2018, another resident allegedly attacked Rizzio, causing her to be hospitalized. Georgianni then filed a lawsuit on Rizzio's behalf alleging various claims against Surpass, the other resident, and others. Surpass moved to compel arbitration based on the Agreement. Georgianni countered that the arbitration requirement was both procedurally and substantively unconscionable.

**¶6** The superior court held an evidentiary hearing, and three witnesses testified: Georgianni, Mariposa representative Rebecca Dice, and arbitrator Winn Sammons.

**¶7** Georgianni testified that her initial meeting with Mariposa, resulting in the first contract, was with Mariposa representative Leslie Davis. The two discussed the first contract, which included the Agreement, for only "10, 15 minutes," before Georgianni signed. Georgianni testified that the conversation focused on Rizzio's care and her "apartment, because that was what [Georgianni] was hyper-focused on." She further testified that she told Davis to: "[t]ell me what I need to sign" and that Davis immediately complied, Georgianni signed, and they discussed other things.

**¶8** Georgianni testified that a similar process occurred with Dice when Rizzio moved to the higher care level of the property. Dice explained to her that the paperwork differences were only as to the level of care and apartment number. Georgianni testified that on neither occasion was she aware the Agreement was in the packet, neither Davis nor Dice mentioned the Agreement, and she did not receive the documents in advance.

**¶9** Dice testified that her standard practice was to send documents to individuals before meeting them in person, to read the appendix titles aloud at the signing, and to block out an hour-and-a-half to go over the documents. She stated that her practice was to point out the Agreement. But, concerning the later contract signing, she stated if a resident was merely moving from one apartment to another, she would only discuss relevant changes unless the resident had any questions. Further, she could not state affirmatively that she had discussed the Agreement at that signing.

**¶10** Sammons testified that he had spent most of his litigation career in medical negligence cases, and been serving as an arbitrator since

2013. He testified that, under the Agreement, "every scenario contemplated involves the plaintiff bearing the defense fees and costs, but no scenario contemplate[d] the defense bearing the plaintiff's" fees and costs. He noted that Rizzio's contractual obligation to bear the defense costs and fees in arbitration regardless of who won was not common practice in eldercare.

¶11 The superior court found that: "(1) [the contract] was drafted by Defendants; (2) Plaintiff's daughter had little opportunity to review the contract; (3) the arbitration terms were not verbally explained to her; and (4) Plaintiff's daughter had no opportunity to bargain with Defendants." The court also found that not only would Rizzio be unable to effectively vindicate her claim given the costs of arbitration, but that the contract unfairly allocated all the costs of arbitration to Rizzio, even if she prevailed at arbitration. Accordingly, the court found that, under the totality of the circumstances, the Agreement was procedurally and substantively unconscionable and that it violated Rizzio's reasonable expectations.

¶12 Defendants timely appealed.

## DISCUSSION

¶13 We review the denial of a motion to compel arbitration *de novo*. *Sec. Alarm Fin. Enters., L.P. v. Fuller*, 242 Ariz. 512, 515, ¶ 9 (App. 2017). "[W]e defer, absent clear error, to the factual findings upon which the trial court's conclusions are based." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 246–47, ¶ 16 (App. 2005).

## I. The FAA Applies to the Agreement.

¶14 The Federal Arbitration Act ("FAA") states that arbitration provisions in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation *of any contract*." 9 U.S.C. § 2 (emphasis added). The words "involving commerce" in Section 2 of the FAA indicate Congress's intent to exercise its Commerce Clause powers to their fullest extent in the FAA. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). Here, the contract is between an Arizona resident (Rizzio) and an assisted living facility owned and operated by a Texas LLC (Surpass). The construction, hiring, and operation of the facility by a foreign LLC is interstate commerce for the purposes of the FAA. *See United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (defining the three categories of activity that Congress may regulate under the Commerce Clause). The FAA applies.

¶15     When the FAA applies to an arbitration agreement, a court "must place [the] agreement[] on an equal footing with other contracts . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). That said, "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

## II.     The Agreement Is Not Procedurally Unconscionable.

¶16     Surpass argues the arbitration agreement is not procedurally unconscionable. State law, not federal law, provides the standard for unconscionability. *See Sec. Alarm*, 242 Ariz. at 516, ¶ 11 ("Whether an arbitration agreement [under the FAA] is valid, irrevocable, and enforceable is governed by state law."); *see also Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 90 (1995); *Casarotto*, 517 U.S. at 686–87. Either procedural or substantive unconscionability may be an independent defense against enforcement of an agreement. *Duenas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, 135, ¶ 7 (App. 2014) (rejecting argument that individual challenging the agreement must prove both procedural and substantive unconscionability because "[e]ither doctrine can provide an independent defense to enforceability"); 9 U.S.C. § 2. Under Arizona law, a contract is procedurally unconscionable when "unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things [meant that] bargaining did not proceed as it should." *Duenas*, 236 Ariz. at 135, ¶ 8 (App. 2014) (quoting *Clark v. Renaissance W., L.L.C.*, 232 Ariz. 510, 512, ¶ 8 (App. 2013)).

¶17     Arizona courts consider numerous factors when determining whether a contract is procedurally unconscionable, including:

> [A]ge, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.

*Maxwell*, 184 Ariz. at 89 (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)). Further, courts may also consider "whether the contract was separate from other paperwork, whether the contract used conspicuous typeface . . . and whether the contract was signed hurriedly and without explanation in emergency circumstances[.]" *Duenas*, 236 Ariz. at 135, ¶ 8 (internal citations omitted). The *Duenas* court rejected a

procedural unconscionability claim where the plaintiff had "an opportunity to review [the] agreement and exercise independent judgment," there was no "inconspicuous bundl[ing] with other contractual terms," and the agreement did not serve "as a precondition to care." 236 Ariz. at 136, ¶ 11.

¶18          The superior court's factual findings here do not establish procedural unconscionability. Instead, at most they demonstrate that the Agreement was akin to a standardized adhesion contract. An adhesion contract is offered "on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired . . . services except by acquiescing in the form contract." *Id.* at 137–38, ¶ 20 (quoting *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148, 150 (1992)). Such contracts are not *per se* unconscionable and, instead, are typically enforceable. *Id.* at 137, ¶ 20 n.2.

¶19          Nothing in applicable Arizona law requires a drafter to explain the provisions of standardized contracts, nor does the post-hoc regret of a party to such a contract suffice to demonstrate unconscionability. *See id.* at 135–36, ¶¶ 10–11; *see also Casarotto*, 517 U.S. at 687–88 (holding that special notice provisions applying only to arbitration agreements were preempted by the FAA). Nor can Rizzio find refuge in Georgianni's claim that she "neglected to read" the Agreement. *Rocz v. Drexel Burnham Lambert, Inc.*, 154 Ariz. 462, 466 (App. 1987). This is particularly true given Georgianni's acknowledgement that she pressed Davis to just "[t]ell [her] what [she] need[ed] to sign."

¶20          The record establishes that Georgianni herself limited the amount of time she took to review the Agreement. It also demonstrates that Surpass included in the Agreement express language, in bold typeface, recommending consultation with legal counsel and that Rizzio's admission to Mariposa was not contingent on signing the Agreement. Nothing in the record suggests the presence of "emergency circumstances" or Surpass-imposed time pressure. *See Duenas*, 236 Ariz. at 135, ¶ 8. This record does not support a finding of procedural unconscionability and we therefore reverse that finding.

III.    **The Superior Court Correctly Found the Cost-Shifting Provision of the Agreement Substantively Unconscionable.**

¶21          Surpass also contests the superior court's finding of substantive unconscionability. Substantive unconscionability occurs where a contract has "terms so one-sided as to oppress or unfairly surprise an

innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Maxwell*, 184 Ariz. at 89; *see also Clark*, 232 Ariz. at 512, ¶ 8. Substantive unconscionability examines the relative fairness of the obligations undertaken. *Gullett ex rel. Estate of Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 241 Ariz. 539, ¶ 25 (App. 2017). Arbitration agreements may be substantively unconscionable "if the fees and costs to arbitrate are so excessive as to 'deny a potential litigant the opportunity to vindicate his or her rights.'" *Clark*, 232 Ariz. at 512, ¶ 8 (quoting *Harrington*, 211 Ariz. at 252, ¶ 39).

¶22        Here, the superior court correctly found that the cost-shifting provision in the Agreement was substantively unconscionable. The agreements in *Clark* and *Harrington* left the allocation of arbitration costs and expenses unstated. In contrast, the Agreement specifically allocated the payment of *all* costs, fees, and expenses to plaintiff, *even if she prevails.* This is unusual, one-sided, and operates as a prospective penalty for any resident seeking to bring a meritorious claim. We agree with the superior court that this provision is oppressive and may not be enforced.

¶23        That finding, however, is not dispositive. The Agreement contains an express severability clause under which the cost-shifting provision may be severed while the remainder of the Agreement remains in effect. Rizzio contends that we cannot sever the cost-shifting provision because that would leave the Agreement with no direction on allocation of costs and, even absent the provision here, Rizzio cannot afford to pay arbitration costs.

¶24        Mere silence as to the allocation of arbitration costs does not support invalidating an agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 ("[T]he arbitration agreement's silence on [the allocation of costs] is plainly insufficient to render it unenforceable."). Moreover, our legislature provided for arbitration agreements without cost allocation provisions. A.R.S. § 12-3021(D) (providing that, absent a provision directing otherwise, the arbitrator may direct the payment of costs in the arbitration award); *see also* 9 U.S.C. § 9 (generally presuming discretionary authority of arbitrator to enter award under FAA). Thus, a lack of guidance as to cost allocation in the Agreement resulting from severance is not a concern. Rizzio's argument that she cannot afford arbitration goes to whether the Agreement is substantively unconscionable even without the cost-shifting provision. Thus, we turn to whether the the Agreement, without the cost-shifting provision, is substantively unconscionable.

## IV. The Agreement Without the Cost-Shifting Provision is not Substantively Unconscionable.

¶25 An arbitration agreement is not substantively unconscionable if "'the prospective litigant effectively may vindicate' his or her rights in the arbitral forum." *Harrington*, 211 Ariz. at 252, ¶ 42 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). Effective vindication may be thwarted by "filing and administrative fees attached to arbitration that are so high as to make access to the forum impractical." *Amer. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). The doctrine does not permit courts to invalidate arbitration agreements on the grounds that they merely make "it [] not worth the expense involved in *proving* a statutory remedy . . . ." *Id.* The issue presents a case-by-case inquiry, relying on "individualized evidence to establish that the costs of arbitration are prohibitive." *Harrington*, 211 Ariz. at 252, ¶¶ 43–44 (citing *Green Tree*, 531 U.S. at 91–92). Our invalidation of the cost-shifting provision leaves the Agreement silent as to who bears the costs of arbitration here; this silence on its own cannot warrant a finding of substantive unconscionability where the FAA applies. *Green Tree*, 531 U.S. at 90–91.

¶26 In *Harrington*, evidence showing approximately $12,000 in arbitration costs plus additional arbitrators' fees accompanied by the mere assertion that the costs were prohibitive was insufficient to establish substantive unconscionability. *See* 211 Ariz. at 253, ¶¶ 45–49. By contrast, in *Clark*, the court held that an arbitration agreement was substantively unconscionable due to an estimated $22,800 in arbitrators' fees plus costs, established on the record, and the lack of opportunity for cost reduction or deferral for hardship. 232 Ariz. at 514–15, ¶¶ 18–21; *see also* A.R.S. § 12-302(C)–(D).

¶27 Neither *Clark* nor *Harrington* contemplated a retainer agreement that provided for counsel to advance arbitration costs. But Georgianni signed just such a retainer agreement with her attorney here, under which her counsel assumed responsibility for advancing all costs. And her counsel represented to this court and the superior court that the repayment of such costs only occurs out of the proceeds of a recovery. In other words, Rizzio will only incur costs if (1) she prevails and thus receives a recovery award, and (2) despite her position as prevailing party the arbitrator declines to allocate all costs to Surpass. The presence of such an arrangement here negates any argument of substantive unconscionability based on arbitration costs: Rizzio is not responsible for up-front costs and such costs cannot, therefore, be held an impediment to arbitration.

¶28      One potential outcome of the arbitration is that Surpass prevails and receives an award of fees and costs against Rizzio. But that is not enough to render the Agreement unconscionable under the FAA—litigants in any forum must weigh the costs of losing. *See Italian Colors*, 570 U.S. at 236. To hold that mere potential costs can invalidate an arbitration agreement, when this would not be true of any other contract, would violate federal law. *See Casarotto*, 517 U.S. at 687–89. Unconscionability due to costs is a question of whether the costs effectively close the forum to the prospective litigant—whether costs "preclude" the litigant from effective vindication of her rights in the arbitral forum. *Green Tree*, 531 U.S. at 90; *see also Italian Colors*, 570 U.S. at 236 (holding that arbitration agreement may be invalid if "filing and administrative fees attached to arbitration [] are so high as to make access to the forum impracticable").

¶29      Accordingly, the finding that the Agreement is unconscionable based on arbitration costs cannot stand. Having stricken the unconscionable cost-shifting provision, given the severance provision, we discern no basis for finding the remainder of the Agreement unconscionable, either procedurally or substantively.

## V.    The Superior Court Erred by Finding the Agreement Violated Rizzio's Reasonable Expectations.

¶30      The superior court held, and Rizzio argues here, that the Agreement violated her reasonable expectations. "[R]easonable expectations claims may present questions of both fact and law," which we review *de novo. Harrington*, 211 Ariz. at 246, ¶ 16. Invalidation of a contract for violating the reasonable expectations of a party is a ground distinct from unconscionability. *Id.* at 252, ¶ 39. The rule precludes the enforcement of a contract provision if one party has reason to believe that the other party would not have entered the contract had he known that it contained the provision. *Darner Motor Sales, Inc. v. Univ. Underwriters Ins. Co.*, 140 Ariz. 383, 391 (1984) (adopting Restatement (Second) of Contracts § 211, which sets forth  the reasonable expectations rule).

¶31      Rizzio advanced no argument, and the record contains no evidence, that Surpass had reason to believe Georgianni would have declined to sign the contract if she had known more about relevant portions of  the Agreement. At best, the record could be said to support an argument that Georgianni would not have signed the Agreement had she known about the cost-shifting provision. We have already severed that provision as unconscionable.

**¶32**  Rizzio relies on *Broemmer v. Abortion Services of Phoenix Ltd.* in arguing that the Agreement violates her reasonable expectations. 173 Ariz. 148 (1992). The *Broemmer* court held that, in the medical context, it violates a patient's reasonable expectations to require her to sign an arbitration agreement without a "conspicuous or explicit waiver of the fundamental right to a jury trial." *Id.* at 152. The United States Supreme Court has since expressed clear disapproval for such an arbitration-specific holding. *See, e.g.*, *Casarotto*, 517 U.S. at 688–89 (invalidating a facially arbitration-specific Montana notice requirement); *Concepcion*, 563 U.S. at 346–52 (invalidating California rule based in unconscionability that undermined policy goals surrounding arbitration); *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426–27 (2017) (invalidating Kentucky rule that "oh so coincidentally" applied only to arbitration agreements without naming them specifically).

**¶33**  *Broemmer* also is distinguishable. Melinda Broemmer, at the time a 21-year old high school graduate in Iowa earning less than $100 per week, entered an arbitration agreement when she sought abortion services in Arizona. She was "not experienced in commercial matters," and, after some litigation, "[was] still not sure 'what arbitration is.'" 173 Ariz. at 152. And the agreement in *Broemmer* was an adhesion contract, offered on a take it or leave it basis, such that staff "presented [it] to [Broemmer] as a condition of treatment." *Id.* at 151. The court invalidated the arbitration agreement but explicitly declined to "write a sweeping, legislative rule concerning all agreements to arbitrate," opting instead to "decide *this* case." *Id.* at 153.

**¶34**  Georgianni's signature on the Agreement was explicitly not a condition of treatment for Rizzio. Further, Georgianni has handled matters relating to Rizzio's health care since 2010 and testified that in her capacity as Rizzio's power of attorney she had previously executed other agreements. This is enough to place us outside *Broemmer*'s narrow scope. We, therefore, reverse the superior court's determination that the Agreement violated Georgianni's reasonable expectations.

## VI. Attorney's Fees

**¶35**  Both parties request attorney's fees under A.R.S. § 12-341.01. In our discretion, we decline to award attorney's fees. Surpass, as the prevailing party, is entitled to its costs on appeal.

## CONCLUSION

**¶36**  We affirm the court's finding of unconscionability (and by extension unenforceability) as to the cost-shifting provision of the

Agreement alone. Having severed that unenforceable provision, on all other grounds and concerning all other provisions of the Agreement, we reverse and remand for further proceedings consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED: AA