NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BEUS GILBERT MCGRODER, PLLC, *Petitioner/Appellee*,

*v.*

ROBERT WILLIAMS and KAREN WILLIAMS, *Respondents/Appellants*.

ROBERT WILLIAMS AND KAREN WILLIAMS, *Plaintiffs/Appellants*,

v.

STEVEN R. BEUS, et us, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0650
FILED 10-06-2022

Appeal from the Superior Court in Maricopa County
No. CV2021-003081
CV2021-008078
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Poli, Moon & Zane, PLLC, Phoenix
By Michael N. Poli, Jeffrey G. Zane
*Counsel for Plaintiffs/Appellants*

Law Offices of Steven R. Beus, Phoenix
By Steven R. Beus
*Co-Counsel for Defendants/Appellees*

Beus Gilbert McGroder, PLLC, Phoenix
By Leo R. Beus
*Co-Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Samuel A. Thumma joined.

**C R U Z**, Judge:

**¶1**　　　　Robert Williams and Karen Williams (collectively "the Williamses") appeal the superior court's order compelling arbitration. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**　　　　The Williamses were members of the Arizona limited liability company Devise Development and Restoration, LLC ("Devise"). Karen Williams was Devise's CFO, and Robert Williams made personal loans to Devise and cosigned for Devise's credit lines and debt. Thomas Hewitt was the Williamses' business partner.

**¶3**　　　　Believing that Hewitt and his wife wrongfully depleted Devise's business assets, the Williamses first retained Steven R. Beus and later Beus Gilbert McGroder, PLLC ("Beus Gilbert") to represent them against Hewitt. In a meeting with Steven Beus, the Williamses signed a

2

Legal Representation Agreement ("the Agreement") with Beus Gilbert on February 12, 2016.[1]

¶4            The Agreement addressed fees and contained a three-page arbitration provision covering disputes, including disputes about legal fees and costs, professional malpractice, and breach of fiduciary duty and contract.  The provision allowed each party to designate an arbitrator and the party-designated arbitrators would then attempt to decide the dispute and, if they were unable to do so within a set time period, they would jointly select a third arbitrator.  The arbitration provision's heading was bolded and underlined; it contained language discussing the advantages and disadvantages of arbitration, including waiving the right to a jury trial.  The provision also highlighted the Williamses' right to seek review by independent counsel, noting that if they had "any questions regarding the effect of Arbitration on" their rights, "and the waiver of such rights," they "should seek advice of and consult with independent counsel" of their choice "in regards to the terms of these arbitration provisions" before signing the Agreement.  In the signature block of the Agreement, the Williamses avowed that they had "READ THE FOREGOING LEGAL RESPRESENTATION AGREEMENT AND CLIENT'S SIGNATURE BELOW INDICATES THAT CLIENT FULLY UNDERSTANDS AND AGREES TO ALL OF THE TERMS OF THIS AGREEMENT INCLUDING, BUT NOT LIMITED TO, ITS ARBITRATION PROVISIONS."

¶5            In December 2015, the Williamses, represented by Beus Gilbert, sued Hewitt.  After Hewitt filed bankruptcy, Beus Gilbert filed a complaint on behalf of the Williamses against Hewitt in the bankruptcy court.  The Williamses reached a settlement with Hewitt, but the bankruptcy court denied relief without prejudice after finding the Williamses gave improper notice.

¶6            Meanwhile, in August 2019, the Williamses stopped paying for legal services.  In December 2019, Beus Gilbert served a demand for arbitration on the Williamses.  When that effort failed, in February 2021, Beus Gilbert filed a petition to compel arbitration of the fee dispute.  The Williamses opposed the petition, arguing the arbitration provision was invalid because Beus Gilbert failed to comply with State Bar of Arizona

---

[1]      The record indicates that the Williamses had entered into a "substantively identical fee agreement[]" with Steven Beus on October 19, 2015.  There is no indication that Steven Beus has sought to compel arbitration under that October 2015 fee agreement and, in any event, the enforceability of that agreement is not before this court.

Ethics Opinion ("EO") 94-05 and Ethics Rule ("ER") 1.8 and because the Williamses lacked full understanding of the provision and had inadequate opportunity to consult independent legal counsel before signing the Agreement.

¶7 Their opposition attached a declaration, under oath, by Karen Williams stating that the Williamses "had little if any time to go through" the Agreement "in detail" and that they signed the Agreement after having "skimmed" it. Her declaration added that "[b]ecause of the hurried manner in which" the Agreement was signed, they "did not realize that buried in the" Agreement "at page 5, we were not only agreeing to arbitrate any potential fee dispute, we were also agreeing to arbitrate any claims for professional malpractice. If we had understood this, we would not have signed" the Agreement "but would have sought a second opinion from another attorney."

¶8 After taking the matter under advisement, the superior court granted the petition to compel arbitration, holding that the Agreement was enforceable because, in entering into a binding arbitration agreement with its client, Beus Gilbert met its ethical obligations, and the Williamses gave informed consent.[2] The court then entered a partial final judgment reflecting that relief, *see* Arizona Rule of Civil Procedure ("Rule") 54(b), and the Williamses filed a timely notice of appeal. We have jurisdiction over the appeal. *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 54, ¶ 23 (1999) ("An order compelling arbitration is not a final judgment and is therefore not appealable under A.R.S §§ 12-2101(B) or 12-2101.01. A party may, however, request that the trial judge enter a final order or judgment under Rule 54(b) or A.R.S. § 12-2101. If the trial judge makes such an order, it is appealable.").

**DISCUSSION**

¶9 We review the superior court's decision to compel arbitration de novo. *Allstate Prop. & Cas. Ins. Co. v. Watts Water Techs., Inc.*, 244 Ariz. 253, 256, ¶ 9 (App. 2018). We defer to the superior court's findings of fact

---

[2] At about that same time, the Williamses filed a separate malpractice action against Steven Beus and Beus Gilbert alleging negligence and breach of fiduciary duty in the bankruptcy case and seeking punitive damages. The superior court consolidated both cases.

unless clearly erroneous. *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 246-47, ¶ 16 (App. 2005).

**¶10** "[I]t is the prerogative and obligation of courts to determine the validity of an arbitration agreement prior to enforcement . . . ." *Gullett ex. rel. Est. of Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 241 Ariz. 532, 542, ¶ 33 (App. 2017). "The validity and enforceability of an arbitration agreement are mixed questions of fact and law . . . ." *Allstate*, 244 Ariz. at 256, ¶ 9. Upon a party's showing of a valid and enforceable arbitration agreement and upon the opposing party's refusal to arbitrate, "the court shall proceed summarily to decide the issue and order the parties to arbitrate." Arizona Revised Statutes ("A.R.S.") section 12-3007(A)(2). An agreement to submit to arbitration any "controversy arising between the parties is valid, enforceable and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." A.R.S. § 12-3006(A). An arbitration agreement may be unenforceable if it is substantively or procedurally unconscionable. *Clark v. Renaissance W., L.L.C.*, 232 Ariz. 510, 512, ¶ 8 (App. 2013). An agreement may be substantively unconscionable when the terms are so one-sided that they oppress or unfairly surprise an innocent party, and the obligations required and rights imposed are imbalanced. *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 89 (1995). An agreement may be procedurally unconscionable when there is unfair surprise, fine print, mistakes, or ignorance of important facts. *Clark*, 232 Ariz. at 512, ¶¶ 8-9.

**¶11** The record supports a finding that the arbitration provision was valid, enforceable, and fair, and the Williamses signed the Agreement after meeting and sufficiently discussing it with Steven Beus. The three-page arbitration provision was clearly marked within the Agreement with a bolded and underlined heading, and its terms and scope were clearly defined. The provision provides substantial disclosure about the arbitration procedures required and, in more than a dozen separate clauses, summarizes the advantages and disadvantages of arbitration. The Williamses have failed to show that the arbitration provision in the Agreement was procedurally or substantively unfair or improper. And the Williamses' claimed failure to read the arbitration provision in detail is no defense. *See Rocz v. Drexel Burnham Lambert, Inc.*, 154 Ariz. 462, 466 (App. 1987).

**¶12** The Williamses have not shown that the arbitration agreement requires the performance of acts that "would be illegal or violate public policy." *Landi v. Arkules*, 172 Ariz. 126, 133 (App. 1992) (citation omitted). Nor have they shown that it is procedurally or substantively

unconscionable. *See Clark*, 232 Ariz. at 512 ¶ 8. And although a fee agreement between a lawyer and a client "is not an ordinary business contract," *In re Swartz*, 141 Ariz. 266, 273 (1984), the Williamses have shown no basis for the court to invalidate the Agreement they signed with Beus Gilbert.

¶13 The Williamses argue that the arbitration provision is unenforceable because the superior court failed to consider ER 1.8 and EO 94-05 in determining its validity. The record, however, is to the contrary. The superior court's detailed minute entry discussed in some detail the requirements of ER 1.8 and EO 94-05. And the record supports the court's conclusion that the arbitration provision complied with those ethical obligations.

¶14 In ER 1.8, a lawyer shall not enter into a business transaction with a client unless the terms are fair and reasonable to the client and are fully disclosed in writing that the client can reasonably understand. ER 1.8(a)(1). The lawyer must also advise the client in writing, give a reasonable opportunity for the client to seek independent counsel, and the client must give informed consent in writing. ER 1.8(a)(2), (3).

¶15 A lawyer may ethically ask a client to agree to mandatory arbitration for the client's future malpractice claims if the lawyer does four things: (1) ensures the clause is fair and reasonable to the client; (2) fully discloses in writing and in understandable language the advantages and disadvantages of arbitration, including the waiver of the right to trial by jury; (3) gives the client a reasonable opportunity to seek independent counsel; and (4) obtains the client's written consent. EO 94-05. "[A] mandatory arbitration provision does not limit a lawyer's malpractice liability" but provides a way to resolve malpractice claims. *Id.* (citing ER 1.8(h)).

¶16 As noted by the superior court, which addressed in depth the breadth of Beus Gilbert's ethical obligations, the first, second and fourth obligation were clearly met. The arbitration provision was fair and reasonable, outlined the advantages and disadvantages of arbitration using plain language, encouraged the Williamses to seek independent legal counsel and the Williamses provided their written consent to the provision.

¶17 On appeal, the Williamses point to Karen's declaration as precluding the superior court from enforcing the arbitration provision and, instead, argue that the declaration "make[s] clear that they were unable to provide their informed consent when they signed the" Agreement. By

definition, however, Karen's declaration is limited to claimed concerns about her informed consent, not Robert's. Robert provided no comparable declaration, meaning he has failed to provide any material factual basis for his claimed lack of informed consent. Karen's declaration also fails to show that the arbitration agreement is not enforceable as to her.

¶18　　Although Karen's declaration asserts that she "had little time if any to go through the" Agreement, Karen does not allege that it was Beus Gilbert who rushed her, impeded her from reading the Agreement in any way or prohibited her from seeking a second opinion from another attorney. Moreover, other than arguing that she failed to read the arbitration provision, which is no defense to enforcement, *Rocz*, 154 Ariz. at 466, Karen's declaration does not discuss or address the express caution in the Agreement that if she had "any questions regarding the effect of" the arbitration provision (including the waiver of rights), before signing the agreement, she "should seek advice of and consult with independent counsel of" her choice regarding "the terms of these arbitration provisions." And Karen does not argue the arbitration provision was unclear or that she did not understand it once she took the time to read it.

¶19　　After the work was done and these disputes arose, Karen now invites us to conclude that the arbitration provision is invalid because Beus Gilbert, after seeing that she "skimmed" the Agreement, should have told her to do something different. We decline this invitation on the record provided. Karen nowhere says that she would never have agreed to arbitration, merely that she "would have sought a second opinion." She does not state what that second opinion would have been, let alone that it would have been a recommendation to not agree to the arbitration provision and that she would have followed such a recommendation.

¶20　　The Williamses cite no case law showing that an otherwise enforceable arbitration agreement between a lawyer and a client cannot be enforced when there is a dispute about whether the client was verbally informed (along with a clear written direction) of the reasonable opportunity to seek independent counsel. Although such a dispute would perhaps subject an attorney to disciplinary proceedings (which apparently have already been resolved in favor of both Steven and Leo Beus here), the Williamses have shown no basis for the court to find the Agreement was unenforceable.

¶21　　The superior court did not err when it found the arbitration provision valid and enforceable.

¶22      The Williamses rely on *Castillo v. Arrieta*, 368 P.3d 1249 (N.M. Ct. App. 2016), in arguing that they had "no time" to review the Agreement before they signed it, they were not fully informed and could not give informed consent. But *Castillo* is neither dispositive nor persuasive. The arbitration provision there read in its entirety: "ARBITRATION CLAUSE: Should any dispute arise, Client and Attorney agree to submit their dispute to arbitration." *Castillo*, 368 P.3d at 1252, ¶ 4. Here, the arbitration provision was detailed and covered in plain language the advantages and disadvantages of arbitration and the implications of waiving the right to a jury trial. The arbitration provision advised the Williamses to seek independent legal counsel before signing it, but they chose not to do so. Moreover, *Castillo* approvingly cited EO 94-05 in noting that a majority of state bar ethics committees had concluded that a proper arbitration provision in a retainer agreement "is at least ethically permitted, provided certain requirements typically involving the client's informed consent, are met." *Id.* at 1255, ¶ 18 (citing authority). The Williamses were fully informed when they signed the Agreement and thus gave their informed consent to it in its entirety, including the arbitration provision. Accordingly, we find no error in the superior court's judgment compelling arbitration.

**CONCLUSION**

¶23      For the foregoing reasons, we affirm.

